UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EMILY KOMLOSSY,<br><br>                          Plaintiff,<br><br>          v.<br><br>FARUQI & FARUQI, LLP; NADEEM FARUQI<br>and LUBNA M. FARUQI,<br><br>                          Defendants. | AMENDED COMPLAINT<br><br> 15 Civ. 9316 (KPF)(SN)<br><br>Jury Trial Demanded |

        Plaintiff Emily Komlossy ("Plaintiff"), by her attorneys, the Law Offices of Karl

J. Stoecker, for her amended complaint against the defendants, alleges as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff is a former non-equity employee/partner in Faruqi & Faruqi, LLP

("Faruqi" or the "Firm"), a law firm which has its main office located in New York City.

Plaintiff brings this lawsuit to redress defendants' breach of an agreement to share generation

fees earned by the defendants resulting from her procurement of a Firm client.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §

1332(a)(1) because the amount in controversy exceeds $75,000.00 and Plaintiff, a resident of the

State of Florida, and defendants, residents of  New York state, are citizens of different states.

3.      Venue is proper in this judicial district pursuant to 28 U.S.C. 1391(b)(1)

because defendant Faruqi is located in this district and all defendants reside in New York State.

## PARTIES

4.      Plaintiff is a citizen of the United States currently residing in Hollywood, Florida.

5.      Defendant Faruqi is a limited liability partnership with its principal office located at 369 Lexington Avenue, New York, New York , 10017.

6.      Defendant Nadeem Faruqi is a resident of New York State and, upon information and belief, a general partner in the Firm.  Upon information and belief Nadeem Faruqi and his sister, co-defendant Lubna Faruqi, are the sole equity partners in the Firm.

7.      Defendant Lubna M. Faruqi is a resident of New York State and is an equity partner in Faruqi and the sister of Nadeem Faruqi.

8.      The Faruqis are "employer(s)" in that they act, and at all relevant times acted, "directly or indirectly in the interest" of themselves and Faruqi &  Faruqi, LLP  in relation to all of defendants' employees and at all relevant times possessed and exercised the authority to hire and fire employees, to supervise, direct and control their work, and to prescribe the terms and conditions of their employment, including their work hours and compensation.

## STATEMENT OF FACTS

### Background

9.      Prior to joining Faruqi, Plaintiff spent approximately seventeen (17) years at the law firm of Labaton Sucharow LLP ("Labaton"), starting as an associate in 1990 and becoming a partner effective 1996.  In 1996, Plaintiff moved to Florida and became the partner in charge of a newly opened Labaton Florida satellite office.

10.     In or around 1996 or 1997, Plaintiff attended a conference at Amelia Island, Florida, at which many pension fund representatives were present.  At that time, Plaintiff met a member of the Board of Trustees of a Michigan county pension fund (the "Fund") and thereafter developed a relationship with the Fund.  Subsequently, through Plaintiff's efforts, the Fund eventually entered into a stock portfolio monitoring agreement with Labaton.

**Plaintiff's Employment Agreement With Faruqi**

11.     During the course of Plaintiff's legal career, she met and became friends with Nadeem Faruqi, who, together with his sister Lubna Faruqi, founded Faruqi in or about 1995.  During this over 20 year friendship, Nadeem Faruqi periodically asked Plaintiff to join the Firm.  In or about February 2007, Plaintiff finally agreed to join the Firm as an at-will, non-equity employee/partner over the course of dinner at a restaurant in Midtown Manhattan.

12.     During the course of that dinner, the parties discussed and agreed upon the terms of Plaintiff's employment at the Firm and shook hands over the arrangement.  Among other things, the parties agreed that Plaintiff would be paid:  (i) an annualized salary of $250,000; (ii) periodic bonuses at the discretion of the Firm; and (iii) twenty (20) percent of any fees earned by the Firm in connection with clients she generated.  In addition, the parties agreed to four weeks paid vacation, insurance coverage and various other provisions of employment.   Given their more than twenty year history of friendship and trust, plaintiff did not believe it was necessary to embody the terms of their agreement in a formal writing.

13.     Upon information and belief, the agreement to pay non-equity partners twenty (20) percent of the fees earned by the Firm in connection with clients they generated on behalf of the Firm was the Firm's standard practice at all times relevant to this Complaint.

14.     Nadeem Faruqi made it clear he would not pay for expenses relating to Plaintiff's work-related trips from Florida to New York as had Labaton.  Plaintiff accordingly immediately began a search for an apartment in New York and purchased one in or about May, 2007.  After a brief hiatus following her resignation from Labaton, she commenced employment at the Firm in August, 2007.

15.     In keeping with their agreement, Plaintiff sought to develop cases and clients for the Firm.  In addition to the Fund, Plaintiff also brought a labor union pension fund into the Firm as well as individual (non-institutional) clients and was the partner in charge of stock monitoring for the institutional clients she procured for the Firm.

16.     In keeping with Plaintiff's compensation agreement, the Firm paid her twenty (20) percent of the fees it earned in connection with the representation of several clients she procured for the Firm as a generation fee. Thus, Plaintiff received twenty (20) percent of the fees the Firm earned in the several cases, including litigations involving Cox Radio, Inc., Bronco Drilling Co., Inc. and BEA Systems.

**The Jefferies Litigation**

17.     In or about December 2012, a merger was announced involving the acquisition of Jefferies Group, Inc. ("Jefferies") by Leucadia Corp, its controlling shareholder. The Fund was a significant holder of stock in Jefferies.  Upon learning of the merger, and its potential impact on the Fund's stock holdings in Jefferies, Plaintiff flew to Flint, Michigan on December 9, 2012 to address the Fund's Board of Trustees about the merger's ramifications and to discuss potential litigation to protect the Fund's interests.  Following Plaintiff's presentation, the Fund voted to retain Faruqi to proceed with litigation against Jefferies and its Board of

Directors, and to represent its interests in a class action which was filed in the Court of Chancery of the State of Delaware ("Delaware court") (the "Jefferies Litigation").

18.     Subsequent to the Fund's retention of Faruqi for the Jefferies Litigation, the Firm reached an agreement with counsel representing other plaintiffs who had filed in the Jefferies Litigation in the Delaware court pursuant to which Faruqi would perform approximately 19% of the services in the case, and if successful, would be entitled to 19% of any fee awarded by the Delaware court.

19.     Plaintiff's employment by Faruqi came to an end on February 11, 2013. Approximately one month later, Faruqi was sued by a former female associate alleging sexual harassment by one of the Firm's partners in New York.  Plaintiff was formally identified as a witness in the sexual harassment case and immediately retained her own counsel.  To avoid any accusations of impropriety or collusion as a former partner (albeit, non-equity) with the Firm and a partner during the events at issue in the sexual harassment case, Plaintiff sought to avoid contact with the Firm except through her counsel..  The sexual harassment case went to trial in New York federal court, resulting in a verdict of guilty on the New York City claims against the Firm on February 5, 2015.

20.     After the filing of the sexual harassment case, Faruqi experienced a rapid turnover of personnel.  Following her resignation, Plaintiff occasionally heard from other former employees of the Firm who indicated that Faruqi continued to pay its *former* lawyer/employees twenty (20) percent of the fees earned by the Firm in respect of  clients' procured by them while they were employed by the Firm, in keeping with its standard practice.

21.     In early 2015, Plaintiff learned that the Jefferies Litigation had settled, subject to Court approval, and that a final settlement hearing would be held on March 25, 2015

in the Delaware court.  Although the settlement was approved on March 25, 2015, the Delaware court reserved decision on a contested fee application wherein counsel for Plaintiffs in the Jefferies litigation (including Faruqi)  were collectively seeking $27.5 million, plus the reimbursement of expenses.

### Defendants Repudiate their Agreement with Plaintiff

22.     On March 23 and 24, 2015, Nadeem Faruqi advised Plaintiff that he was repudiating their agreement and would not pay her any portion of the fees the Firm earned in the Jefferies Litigation.   While he thereafter acknowledged that plaintiff "would have received" a percentage of the fee earned by the Firm as a result of her procurement of the Fund as a client in the Jefferies Litigation had she "stayed at the [F]irm," he nonetheless contended that she was not entitled to anything because she left the Firm prior to its receipt of the Jefferies fees.

23.     The parties' agreement did not condition plaintiff's entitlement to a generation fee on her continued employment at the Firm or on the amount of work she performed, if any, in connection with the client's matter.  In fact, after defendant Nadeem Faruqi repudiated defendants' agreement he advised her that other former employees received client generation fees after they left the firm.

24.     On June 5, 2015, the Delaware court awarded $21.5 million to plaintiffs' counsel in the Jefferies Litigation, approximately $4 million of which was to have been allocated to Faruqi.

25.     Defendants thereafter failed and refused to honor its agreement with Plaintiff and refused to provide her with any portion of the fees earned in the Jefferies Litigation.

6

FIRST CAUSE OF ACTION
(Breach of Contract Against All Defendants)

26.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 25 as though fully set forth herein.

27.     Defendants breached their agreement to pay Plaintiff twenty (20) percent of the fees earned in connection with clients Plaintiff generated, including the fees earned by the Firm in the Jeffries Litigation.

28.     Plaintiff has been damaged as a result of such breach in an amount which exceeds $800,000.00.

SECOND CAUSE OF ACTION
(Estoppel Against All Defendants)

29.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 25 as though fully set forth herein.

30.     Defendants promised to pay Plaintiff twenty (20) percent of  the fees obtained in connection with clients she generated expecting that Plaintiff would rely on such promise.

31.     In reliance on such promise, Plaintiff expended substantial efforts generating clients for defendants' benefit, including the Fund's retention of the Firm for the Jeffries Litigation.

32.     Defendants breached their agreement to pay Plaintiff  twenty (20) percent of the fees earned in connection with clients generated by Plaintiff when they failed to pay Plaintiff twenty (20) percent of the fees earned by the Firm in the Jeffries Litigation.

33.     Plaintiff has been damaged as a result of such breach in an amount which exceeds $800,000.00.

7

34.     Defendants are estopped from failing to pay Plaintiff twenty (20) percent of the fees the Firm earned in connection with the Jeffries litigation.

THIRD CAUSE OF ACTION
(Unjust Enrichment Against All Defendants)

35.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 25 as though fully set forth herein.

36.     Plaintiff conferred a benefit on the defendants by generating a client – the Fund – for the Jeffries Litigation which resulted on a substantial fee for the defendants. Defendants have been unjustly enriched by their failure to pay Plaintiff twenty (20) percent of the fees they earned in the Jeffries Litigation.

FOURTH CAUSE OF ACTION
(Conversion Against All Defendants)

37.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 25 as though fully set forth herein.

38.     Having been promised by the defendants twenty (20) percent of the fees earned in respect of clients Plaintiff generated, the latter has a clear interest in her rightful portion of the fees the Firm earned in connection with the Jeffries Litigation.  By retaining and exercising dominion and control over these funds in derogation of Plaintiff's rights defendants have unlawfully converted those funds for their own benefit.

39.     As a result of such conversion Plaintiff is entitled to declaratory and compensatory relief.

8

FIFTH CAUSE OF ACTION
(Intentional Interference with Contractual Relations Against
Defendants Nadeem Faruqi and Lubna Faruqi)

40.     Plaintiff repeats and realleges each and every allegation set forth in

paragraphs 1 through 25 as though fully set forth herein.

41.     Defendants Nadeem Faruqi and Lubna Faruqi with knowledge of the

foregoing agreement each intentionally urged the other and Faruqi to breach the agreement

without justification.  The foregoing are accordingly liable for intentionally interfering therewith.

SIXTH CAUSE OF ACTION
(for an Accounting Against All Defendants)

42.     Plaintiff repeats and realleges each and every allegation set forth in

paragraphs 1 through 25 as though fully set forth herein.

43.     Plaintiff is entitled to an accounting of all monies earned by the Firm in

connection with the Jeffries Litigation.

SEVENTH CAUSE OF ACTION
(Illegal Deductions From Wages in Violation of NYLL § 193 Against All Defendants)

44.     Plaintiff repeats and realleges each and every allegation set forth in

paragraphs 1 through 25 as though fully set forth herein.

45.     Defendants' failure to pay plaintiff a portion of the fee earned in the

Jefferies Litigation constituted an unlawful deduction from plaintiff's wages which was not

expressly authorized in writing or for plaintiff's benefit.

46.     The foregoing unlawful deduction of wages constitutes a willful violation

of NYLL Article 6 § 193.

47.     As a result of the foregoing violation defendants are accordingly jointly and severally liable to plaintiff for her unpaid wages, and for reasonable attorney's fees, costs pre and post judgment interest and liquidated damages.

WHEREFORE, Plaintiff demands judgment as follows:

(a) damages in an amount to be determined at trial, but no less than $800,000.00 plus interest;

(b) punitive damages of not less than $1,000.000.00, and/or liquidated damages;

(c) an accounting;

(d) the costs and disbursements of this action, including attorney's fees and such other and further relief as this Court deems just and proper.

Dated:  Mineola, New York
        February 11, 2016

LAW OFFICES OF KARL J. STOECKER

By:_____s/_____
Karl J. Stoecker (KS 0571)
22 Jericho Turnpike, Suite 100 West
Mineola, New York 11501
Telephone: (212) 818-0080
Facsimile: (212) 818-9055
kjs@kjslawfirm.com