UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EMILY KOMLOSSY,

                    Plaintiff,

          v.

FARUQI & FARUQI, LLP; NADEEM FARUQI
and LUBNA M. FARUQI,

                    Defendants.

Case No. 15 Civ. 9316 (KPF) (SN)

Jury Trial Demanded

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 2

LEGAL STANDARD ............................................................................................................. 4

ARGUMENT ........................................................................................................................... 4

I.      PLAINTIFF'S CLAIMS AGAINST THE FARUQIS ARE BARRED BY NEW YORK'S LLP STATUTE ................................................................................................ 4

II.     PLAINTIFF'S CLAIMS AGAINST DEFENDANTS ARE BARRED BY NEW YORK'S ATTORNEY ETHICS RULES ......................................................................... 6

III.    PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT ............... 9

       A.     New York's Statute Of Frauds Bars The Commission Agreement ....................... 9

       B.     Plaintiff Was Not In Privity With The Faruqis ..................................................... 14

IV.    PLAINTIFF FAILS TO STATE A CLAIM FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS ............................................ 16

V.     PLAINTIFF FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT ................ 19

VI.    PLAINTIFF FAILS TO STATE A CLAIM FOR ESTOPPEL ....................................... 21

VII.   PLAINTIFF FAILS TO STATE A CLAIM FOR CONVERSION ................................ 24

VIII.  PLAINTIFF FAILS TO STATE A CLAIM FOR AN ACCOUNTING .......................... 25

IX.    PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF NYLL § 193 ......... 27

X.     PLAINTIFF IS NOT ENTITLED TO PUNITIVE OR LIQUIDATED DAMAGES ...... 29

XI.    CONCLUSION .............................................................................................................. 30

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Abed v. Azar*,
   No. 08 Civ. 4404 (NRB), 2010 U.S. Dist. LEXIS 1649 (S.D.N.Y. Jan. 5, 2010) .................20

*AHA Sales, Inc. v. Creative Bath Prods., Inc.*,
   867 N.Y.S.2d 169 (App. Div. 2008) .......................................................................................23

*Ams. Mining Corp. v. Theriault*,
   51 A.3d 1213 (Del. 2012) .....................................................................................................13

*Appalachian Enters. v. ePayment Solutions Ltd.*,
   No. 01 CV 11502 (GBD), 2004 U.S. Dist. LEXIS 24657 (S.D.N.Y. Dec. 8, 2004) ......... 15-16

*Arias v. Women in Need, Inc.*,
   712 N.Y.S.2d 103 (App. Div. 2000) .....................................................................................22

*Ashcroft v. Iqbal*,
   556 U.S 662 (2009) ................................................................................................................4

*Bank of Am. Corp. v. Braga Lemgruber*,
   385 F. Supp. 2d 200 (S.D.N.Y. 2005) ..................................................................................25

*Barber v. Deutsche Bank Sec., Inc.*,
   961 N.Y.S.2d 39 (App. Div. 2013) .......................................................................................29

*Benham v. eCommission Solutions, LLC*,
   989 N.Y.S.2d 20 (App. Div. 2014) .......................................................................................19

*Bd. of Trs. ex rel. The Gen. Ret. Sys. of Detroit v. BNY Mellon, N.A.*,
   No. 11 Civ. 6345 (RJS), 2012 U.S. Dist. LEXIS 132724 (S.D.N.Y. Sept. 10, 2012) ............22

*Bonsey v. Kates*,
   No. 13 Civ. 2708 (RWS), 2013 U.S. Dist. LEXIS 119571 (S.D.N.Y. Aug. 17, 2013) ..... 20-21

*Bradkin v. Leverton*,
   257 N.E.2d 643 (N.Y. 1970) .................................................................................................26

*Brandeis Sch., Inc. v. Yakobowicz*,
   15 N.Y.S.3d 64 (App. Div. 2015) .........................................................................................19

*Busgith v. Hudson News Co.*,
   No. 0015087/2005, 2008 N.Y. Misc. LEXIS 8623 (Sup. Ct. Apr. 8, 2008) ..........................28

*Cacchillo v. Insmed, Inc.*,
   551 F. App'x 592 (2d Cir. 2014) ..........................................................................................23

*Cohen v. Lord, Day & Lord*,
    550 N.E.2d 410 (N.Y. 1989)...................................................................6-7

*Colangelo v. Fresh Perspectives*,
    948 F. Supp. 331 (S.D.N.Y. 1996)...............................................................28

*Consolid. Rail Corp v. MASP Equip. Corp.*,
    490 N.E.2d 514 (N.Y. 1986).......................................................................30

*In re Cooperman*,
    83 N.Y.2d 465 (1994) ................................................................................7

*Corsello v. Verizon N.Y., Inc.*,
    967 N.E.2d 1177 (N.Y. 2012).....................................................................19

*Cruz v. NYNEX Info. Res.*,
    703 N.Y.S.2d 103 (App. Div. 2000).............................................................16

*Cuervo v. Opera Solutions LLC*,
    928 N.Y.S.2d 26 (App. Div. 2011)...............................................................28

*D & N Boening, Inc. v. Kirsch Beverages, Inc.*,
    472 N.E.2d 992 (N.Y. 1984).......................................................................9

*D'Esposito v. Gusrae, Kaplan & Bruno PLLC*,
    844 N.Y.S.2d 214 (App. Div. 2007).............................................................26

*DDR Constr. Servs. v. Siemens Indus.*,
    770 F. Supp. 2d 627 (S.D.N.Y. 2011)......................................................25, 30

*Denius v. Dunlap*,
    330 F.3d 919 (7th Cir. 2003) .....................................................................2

*Devash LLC v. German Am. Capital Corp.*,
    959 N.Y.S.2d 10 (App. Div. 2013) ........................................................ 17-18

*Ederer v. Gurksy*,
    881 N.E.2d 204 (N.Y. 2007).......................................................................5

*Edlinger v. United States*,
    No. 3:10-cv-148, 2010 U.S. Dist. LEXIS 36991 (N.D.N.Y. Apr. 14, 2010)............6

*Engstrom v. Elan Corp., PLC*,
    No. 11 Civ. 1232 (SAS), 2011 U.S. Dist. LEXIS 120167 (S.D.N.Y. Oct. 18, 2011) ..............4

*ESI, Inc. v. Coastal Power Prod. Co.*,
    995 F. Supp. 419 (S.D.N.Y. 1998).............................................................25

*Fayard v. Henry Holt & Co.*,
726 F. Supp. 438 (S.D.N.Y. 1989)......................................................................17

*Ferrand v. Credit Lyonnais*,
No. 02 Civ. 5191 (VM), 2003 U.S. Dist. LEXIS 17202 (S.D.N.Y. Sept. 30, 2003)..............27

*Fesseha v. TD Waterhouse Investor Servs.*,
761 N.Y.S.2d 22 (App. Div. 2003)......................................................................24

*Finley v. Giacobbe*,
79 F.3d 1285 (2d Cir. 1996)..............................................................................17

*Fiorenti v. Cent. Emergency Physicians, PLLC*,
762 N.Y.S.2d 402 (App. Div. 2003)....................................................................25

*Gersten-Hillman Agency v. Heyman*,
892 N.Y.S.2d 209 (App. Div. 2009)....................................................................26

*Ginsberg v. Fairfield-Noble Corp.*,
440 N.Y.S.2d 222 (App. Div. 1981)....................................................................23

*Gold v. Am. Med. Alert Corp.*,
No. 14 Civ. 5485 (JFK), 2015 U.S. Dist. LEXIS 108122 (S.D.N.Y. Aug. 17, 2015)..............28

*Goldberg v. Jacquet*,
No. 14 Civ. 1581 (PAC), 2015 U.S. Dist. LEXIS 117860 (S.D.N.Y. Sept. 3, 2015)........27-28

*Golden Pac. Bancorp v. FDIC*,
273 F.3d 509 (2d Cir. 2001)..............................................................................19

*Gould v. Decolator*,
994 N.Y.S.2d 368 (App. Div. 2014)......................................................................6

*Grewal v. Cuneo*,
No. 13-cv-6836 (RA), 2015 U.S. Dist. LEXIS 87755 (S.D.N.Y. July 7, 2015).....................6

*Hess v. Kanoski & Assocs.*,
No. 3:09-cv-03334-SLD-JAG,
2014 U.S. Dist. LEXIS 42584 (C.D. Ill. Mar. 28, 2014).................................... 12-13

*Hobler v. Hussain*,
975 N.Y.S.2d 212 (App. Div. 2013)....................................................................22

*Hughes v. Standard Chartered Bank PLC*,
No. 09 Civ. 4595 (PKC), 2010 U.S. Dist. LEXIS 38871 (S.D.N.Y. Apr. 14, 2010)..............20

*Idearc Media LLC v. Siegel*,
No. 09-CV-1090S, 2013 U.S. Dist. LEXIS 64136 (W.D.N.Y. May 2, 2013)........................6

*International Jet Markets v. Simat, Helliesen & Eichner*,
No. 95 Civ. 7967 (TPG), 1997 U.S. Dist. LEXIS 12265 (S.D.N.Y. Aug. 18, 1997) .............17

*In re Jefferies Grp., Inc. S'holders Litig.*,
C.A. No. 8059-CB, letter op. (Del. Ch. June 5, 2015) .........................................................3-4

*Karmilowicz v. Hartford Fin. Servs. Grp.*,
No. 11 Civ. 539 (CM), 2011 U.S. Dist. LEXIS 77481 (S.D.N.Y. July 14, 2011) .................20

*Kaye v. Grossman*,
202 F.3d 611 (2d Cir. 2000) ...............................................................................................21

*King v. Fox*,
851 N.E.2d 1184 (N.Y. 2006) ..............................................................................................12

*Kopel v. Bandwidth Tech. Corp.*,
868 N.Y.S.2d 16 (App. Div. 2008) ......................................................................................24

*L.H. v. V.W.*,
171 Misc. 2d 120 (N.Y. Civ. Ct. 1996) ..................................................................................7

*La Rock & Perez, LLP v. Sang Joon Sim*,
987 N.Y.S.2d 381 (App. Div. 2014) ....................................................................................5-6

*Lamb v. Money Transfer Sys.*,
No. 12-CV-6584 CJS, 2013 U.S. Dist. LEXIS 132007 (W.D.N.Y. Sept. 13, 2013)..............20

*Levine v. Zadro Prods.*,
No. 02 Civ. 2838 (GBD),
2003 U.S. Dist. LEXIS 9637 (S.D.N.Y. June 9, 2003) .................................................... 10-13

*Levion v. Société Générale*,
822 F. Supp. 2d 390 (S.D.N.Y. 2011) ............................................................... 19-20, 29

*Marciano v. Crowley*,
No. 08-CV-305-JTC, 2009 U.S. Dist. LEXIS 89450 (W.D.N.Y. Sept. 28, 2009) ...... 10-11, 13

*Marino v. Oakwood Care Ctr.*,
774 N.Y.S.2d 562 (App. Div. 2004) ....................................................................................22

*Martin H. Bauman Assoc., Inc. v. H & M Int'l Transp., Inc.*,
567 N.Y.S.2d 404 (App. Div. 1991) ....................................................................................19

*Martocci v. Greater N.Y. Brewery, Inc.*,
92 N.E.2d 887 (N.Y. 1950) ..................................................................................................11

*Matarazzo Blumberg & Assocs., P.C. v. Abramovitz*,
749 N.Y.S.2d 62 (App. Div. 2002) ........................................................................................7

*Mayer v. Publishers Clearing House*,
    205 A.D.2d 506 (N.Y. App. Div. 1994) ........................................................ 22-23

*Mazur v. Greenberg*,
    488 N.Y.S.2d 397 (App. Div. 1985) ............................................................... 26

*MBL Life Assurance Corp. v. 555 Realty Co.*,
    658 N.Y.S.2d 122 (App. Div. 1997) ............................................................... 24

*McMahon v. Evans*,
    169 Misc. 2d 509 (N.Y. Sup. Ct. 1996) ........................................................... 7

*Merex A.G. v. Fairchild Weston Sys.*,
    29 F.3d 821 (2d Cir. 1994) ........................................................................... 23

*Miles A. Kletter, D.M.D. & Andrew S. Levine, D.D.S., P.C. v. Fleming*,
    820 N.Y.S.2d 348 (App. Div. 2006) ............................................................ 27-28

*Minetos v. City Univ. of N.Y.*,
    925 F. Supp. 177 (S.D.N.Y. 1996) ................................................................. 18

*Mobile Data Shred, Inc. v. United Bank of Switz.*,
    No. 99 Civ. 10315 (SAS), 2000 U.S. Dist. LEXIS 4252 (S.D.N.Y. Apr. 3, 2000) .......... 17-18

*N.Y.U. v. Cont'l Ins. Co.*,
    662 N.E.2d 763 (N.Y. 1995) ....................................................................... 29-30

*Nasso v. Bio Reference Labs., Inc.*,
    892 F. Supp. 2d 439 (E.D.N.Y. 2012) ............................................................ 24

*New York State Correctional Officers & Police Benevolent Ass'n v. State*,
    726 N.E.2d 462 (N.Y. 1999) .......................................................................... 6

*Niyazov v. Park Fragrance LLC*,
    No. 156476/2013, 2014 N.Y. Misc. LEXIS 1073 (Sup. Ct. Mar. 7, 2014) ................ 9-10

*Ofer v. Sirota*,
    984 N.Y.S.2d 312 (App. Div. 2014) ............................................................... 24

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.*,
    712 F.3d 705 (2d Cir. 2013) ........................................................................... 4

*Richbell Info. Servs. v. Jupiter Partners, L.P.*,
    765 N.Y.S.2d 575 (App. Div. 2003) ............................................................... 24

*Rockland Exposition, Inc. v. Alliance of Auto. Serv. Providers of N.J.*,
    894 F. Supp. 2d 288 (S.D.N.Y. 2012) ......................................................... 15, 17

*Rooney v. Tyson*,
    697 N.E.2d 571 (N.Y. 1998)...................................................................................9

*Ross v. Am. Express Co.*,
    35 F. Supp. 3d 407 (S.D.N.Y. 2014)........................................................................2

*Salazar v. Sacco & Fillas, LLP*,
    980 N.Y.S.2d 484 (App. Div. 2014).........................................................................6

*Salzman Sign Co. v. Beck*,
    176 N.E.2d 74 (N.Y. 1961)....................................................................................15

*Saunders v. Bank of Am.*,
    No. 12 Civ. 9201 (GBD) (RLE),
    2014 U.S. Dist. LEXIS 134142 (S.D.N.Y. Aug. 29, 2014)....................................15

*Scarpinato v. 1770 Inn, LLC*,
    No. 13-CV-0955(JS)(SIL), 2015 U.S. Dist. LEXIS 105428 (E.D.N.Y. Aug. 11, 2015)........20

*Schwartz v. Hotel Carlyle Owners Corp.*,
    20 N.Y.S.3d 341 (App. Div. 2015).........................................................................29

*Scott v. Rosenthal*,
    No. 97 Civ. 2143 (LLS), 2000 U.S. Dist. LEXIS 23608 (S.D.N.Y. Dec. 19, 2000).........26-27

*Sheresky v. Sheresky Aronson Mayefsky & Sloan, LLP*,
    35 Misc. 3d 1201(A) (N.Y. Sup. Ct. 2011) .............................................................8

*Simpri v. City of N.Y.*,
    No. 00 Civ. 6712 (SAS), 2003 U.S. Dist. LEXIS 23266 (S.D.N.Y. Dec. 30, 2003)..............22

*Smith v. Fitzsimmons*,
    584 N.Y.S.2d 692 (App. Div. 1992)........................................................................14

*St. Laurie Ltd. v. Yves St. Laurent Am., Inc.*,
    No. 13-CV-6857 (DAB), 2015 U.S. Dist. LEXIS 42621 (S.D.N.Y. Mar. 25, 2015)..............14

*Stanley Agency v. Behind the Bench (national Basketball Wives Association)*,
    23 Misc. 3d 1107(A) (N.Y. Sup. Ct. 2009) .............................................................14

*Steinberg v. Schnapp*,
    899 N.Y.S.2d 167 (App. Div. 2010)........................................................................16

*Stillman v. Townsend*,
    No. 05 Civ. 6612 (WHP), 2006 U.S. Dist. LEXIS 50770 (S.D.N.Y. July 26, 2006)..............24

*Strauss v. Fleet Mortg. Corp.*,
    282 A.D.2d 736 (N.Y. App. Div. 2001) ............................................................10, 21

*Susman v. Commerzbank Capital Mkts. Corp.*,
    945 N.Y.S.2d 5 (App. Div. 2012) ......................................................................22

*Szerdahelyi v. Harris*,
    490 N.E.2d 517 (N.Y. 1986) ............................................................................6

*Tallini v. Business Air, Inc.*,
    538 N.Y.S.2d 664 (App. Div. 1989) ................................................................21

*Tandycrafts, Inc. v. Initio Partners*,
    562 A.2d 1162 (Del. 1989) ...........................................................................13

*In re Thelen LLP*,
    736 F.3d 213 (2d Cir. 2013) ............................................................................5

*Thiam v. Am. Talent Agency, Inc.*,
    No. 11 Civ. 1465 (GBD), 2012 U.S. Dist. LEXIS 46279 (S.D.N.Y. Mar. 27, 2012) ............12

*Thompson v. Bosswick*,
    855 F. Supp. 2d 67 (S.D.N.Y. 2012) ................................................................18

*Truelove v. Ne. Capital & Advisory, Inc.*,
    738 N.E.2d 770 (N.Y. 2006) ...........................................................................29

*Underdog Trucking, LLC v. Verizon Servs. Corp*,
    No. 09 Civ. 8918 (DLC), 2010 U.S. Dist. LEXIS 72642 (S.D.N.Y. July 20, 2010) ..............22

*Ungar v. Matarazzo Blumberg & Assocs., P.C.*,
    688 N.Y.S.2d 588 (App. Div. 1999) ..................................................................7

*Vaccarella v. Sperling*,
    960 N.Y.S.2d 53 (App. Term 2012) ...................................................................8

*Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*,
    455 F. App'x 102 (2d Cir. 2012) .....................................................................16

*Willis Re Inc. v. Hudson*,
    816 N.Y.S.2d 43 (App. Div. 2006) ...................................................................17

*Winkler v. Friedman*,
    No. 12-CV-3893, 2013 U.S. Dist. LEXIS 109520 (E.D.N.Y. Aug. 5, 2013) ........................16

*Yellow Book Sales & Distrib. Co., Inc. v. On Call Plumbing & Heating, Inc.*,
    952 N.Y.S.2d 615 (App. Div. 2012) ..................................................................15

*Zeising v. Kelly*,
    152 F. Supp. 2d 335 (S.D.N.Y. 2001) ................................................................21

**Statutes**

N.Y. Gen. Oblig. Law § 5-701(a) (Consol. 2015) .................................................9, 13

New York Labor Law § 190(7) ........................................................................28

New York Labor Law § 191 .............................................................................28

New York Labor Law § 193 .............................................................................27

New York Partnership Law § 26(b) ..............................................................4, 5

**Other Authorities**

7 Am. Jur. 2d *Attorneys At Law* § 258 (2016) ............................................12

Nassau Cnty. Bar, Op. No. 1994-2 .................................................................8

New York Lawyer's Code of Professional Responsibility DR 2-107 .............8

New York Rules of Professional Conduct, Preamble .................................6-7

New York Rules of Professional Conduct, Rule 1.5 ...................................7-8

Defendants Faruqi & Faruqi, LLP (the "Firm"), Nadeem Faruqi ("Nadeem"), and Lubna Faruqi ("Lubna") (collectively, "Defendants") respectfully submit this memorandum of law in support of Defendants' motion to dismiss Plaintiff's Amended Complaint (ECF No. 14) pursuant to Federal Rules of Civil Procedure 12(b)(6) and 8.[1]  Plaintiff asserts seven causes of action: (1) breach of contract; (2) estoppel; (3) unjust enrichment; (4) conversion; (5) intentional interference with contractual relations; (6) accounting; and (7) illegal deduction from wages in violation of New York Labor Law ("NYLL") § 193.  With the exception of the claim for intentional interference with contractual relations, which is only asserted against Nadeem and Lubna (the "Faruqis"), the remainder of the actions are asserted against all Defendants.

## PRELIMINARY STATEMENT

Plaintiff Emily Komlossy, a former at-will "non-equity employee/partner" in the Firm, brings this suit against the Firm and its sole equity partners, siblings Lubna Faruqi and Nadeem Faruqi.  Regardless of how the causes of action are pleaded, Plaintiff essentially asserts a breach of contract claim wherein she alleges she is owed 20% of the fees the Firm earned in a case the Firm litigated on behalf of a client that Plaintiff alleges she "generated" for the Firm.

Although Defendants dispute many of Plaintiff's allegations, Defendants recognize this is a Rule 12(b)(6) motion and shall assume *arguendo* that Plaintiff's factual allegations are true for the purposes of this motion.  Even as alleged, however, Plaintiff fails to state viable claims. Given the number of counts and the number of defenses, at the outset, Defendants will simply summarize their defenses below:

- New York Partnership Law § 26(b) bars ***all claims against the Faruqis***;

- New York's attorney ethics rules bar ***all claims*** because Plaintiff's alleged

---

[1]     All "¶ ____" references herein are to paragraphs in Plaintiff's Amended Complaint.  All emphases are added and all internal citations and quotations are omitted unless otherwise noted.

agreement is void as against public policy;

- Plaintiff's ***breach of contract*** claim fails because (1) it is barred by New York's Statute of Frauds and (2) Plaintiff was not in privity with the Faruqis;

- Plaintiff's ***intentional interference with contractual relations*** claim fails because (1) a valid and enforceable contract never existed; (2) Plaintiff terminated the alleged agreement when she quit; and (3) the Faruqis, as agents of the Firm, cannot be held liable for inducing the Firm's breach;

- Plaintiff's ***unjust enrichment*** claim fails because (1) it is duplicative of her breach of contract claim; (2) Plaintiff was paid a sizeable salary up until when she quit the Firm; and (3) it is barred by the Statute of Frauds;

- Plaintiff's ***estoppel*** claim fails because (1) it is duplicative of her breach of contract claim; (2) Plaintiff cannot establish reasonable reliance because her employment was at will; and (3) Plaintiff has failed to allege an unconscionable injury;

- Plaintiff's ***conversion*** claim fails because (1) it is duplicative of her breach of contract claim; and (2) she never had ownership, possession, or control of the converted funds prior to the conversion;

- Plaintiff's ***accounting*** claim fails because at-will employees are not entitled to an accounting even if the employee had the title of partner;

- Plaintiff's ***NYLL § 193 claim for deduction of wages*** fails because her claim does not involve a deduction of wages within the meaning of the statute; and

- Plaintiff is not entitled to her ***demand for punitive and liquidated damages***.

For these reasons, as explained more fully below, Defendants respectfully submit

Plaintiff's Amended Complaint (ECF No. 14) should be dismissed with prejudice.

## STATEMENT OF FACTS

The Firm is a New York[2] limited liability partnership ("LLP") founded by the Faruqis in

1995. ¶¶1, 5, 11. In February of 2007, while still employed at Labaton Sucharow, LLP

---

[2]     Ex. 1, NYS Department of State, Division of Corporations, Entity Information as of February 17, 2015.  All exhibits referenced herein are annexed to the Declaration of Richard W. Gonnello, filed herewith.  Defendants request that the Court take judicial notice that the Firm is a New York LLP.  *See Ross v. Am. Express Co.*, 35 F. Supp. 3d 407, 435 n.27 (S.D.N.Y. 2014) (courts may take judicial notice of data contained in government reports); *Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003) (concluding that district court may take judicial notice of information on an official government website).

("Labaton"), Plaintiff agreed to join the Firm as an "at-will, non-equity employee/partner." ¶¶1, 11. Plaintiff was to receive an annualized salary of $250,000 and discretionary bonuses. ¶12. Plaintiff alleges she was also to receive 20% "of *any* fees earned by the Firm in connection with clients she generated" (the "Commission Agreement" or the "Agreement"). ¶12. Plaintiff further alleges she was entitled to a commission whether or not she was employed at the Firm and whether or not she performed any work (besides "generating" the client). ¶23.

For unstated reasons, Plaintiff did not commence employment at the Firm until six months later in August of 2007. ¶14.

On December 9, 2012, Plaintiff flew to Michigan to meet with the Board of Trustees of a Michigan county pension fund (the "Fund") to discuss potential litigation against Jefferies Group, Inc. ("Jefferies") in light of the Fund's holdings in Jefferies' stock. ¶17. The Fund subsequently retained the Firm on a contingency fee basis to commence litigation against Jefferies in the Delaware Court of Chancery (the "Jefferies Case"). ¶17; Ex. 2, *In re Jefferies Grp., Inc. S'holders Litig.*, C.A. No. 8059-CB, letter op. at 8 (Del. Ch. June 5, 2015).

Plaintiff quit the Firm two months later on February 11, 2013, thereby terminating her at-will employment. ¶¶17, 19-20. Plaintiff does not allege she performed any legal services for the Fund on the Jefferies Case either before or after she quit.[3]

Over the next two years, the Firm and three other law firms successfully prosecuted the Jefferies Case, reached a $70 million settlement, obtained court approval of the settlement, and on June 5, 2015 obtained an award of attorneys' fees from the Honorable Andre G. Bouchard. ¶¶21, 24; *see* Ex. 2 at 4-9. Chancellor Bouchard awarded three other law firms who filed a similar action against Jefferies in New York $0 in fees. Ex. 2 at 10-15.

---

[3] Had Plaintiff continued to work at the Firm and work on the Jefferies Case she would undoubtedly have received a significant bonus.

After having sat on the sidelines for more than two years, Plaintiff now seeks 20% of the attorneys' fees the Firm earned in the Jefferies Case even though those fees had not been earned by the Firm at the time Plaintiff quit (*see* ¶¶19-21, 24) and were subject to material contingencies that Plaintiff played no role in overcoming: (1) the Fund's continued retention of the Firm to prosecute the Fund's claims against Jefferies; (2) a successful outcome in the Jefferies Case; and (3) the Chancery Court's approval of the Firm's fee application (*see* ¶¶21, 24; *see generally* Ex. 2).

## LEGAL STANDARD

In *Ashcroft v. Iqbal*, 556 U.S 662, 679 (2009), the Supreme Court set forth a "two-pronged approach" to determine when claims subject to Rule 8's notice pleading requirements are subject to dismissal under Rule 12(b)(6). *Engstrom v. Elan Corp., PLC*, No. 11 Civ. 1232 (SAS), 2011 U.S. Dist. LEXIS 120167, at *14 (S.D.N.Y. Oct. 18, 2011). First, mere legal conclusions are "not entitled to the assumption of truth." *Id.* Second, "when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 718 (2d Cir. 2013).

## ARGUMENT

**I.      PLAINTIFF'S CLAIMS AGAINST THE FARUQIS ARE BARRED BY NEW YORK'S LLP STATUTE**

Because the Firm is a registered New York LLP (¶¶1, 5), § 26(b) of New York's Partnership Law requires dismissal of all claims against the Faruqis "whether arising in ***tort,***

***contract or otherwise***[.]"[4]  N.Y. P'ship Law § 26(b) (Consol. 2015).  As explained by New

York's Court of Appeals, "section 26(b) precludes the potential for a plaintiff to attempt an end-

run around the liability shield of [section 26(b)] by first asserting a claim against the [LLP] and

then arguing that the general partnership statute requires the [LLP] partners to make

contributions to the [LLP]."  *Ederer v. Gurksy*, 881 N.E.2d 204, 210-11 (N.Y. 2007).  The

purpose of the statute is "to enact liability protection for partners in limited liability partnerships

that is the same as that accorded to shareholders of a professional corporation organized under

the [Business Corporation Law] [and] as that accorded to members of a professional LLC."  *Id.*

at 211.

Ther two narrow exceptions to § 26(b)'s personal liability shield are contained in §§ 26(c)

and 26(d).  Section 26(c) is a limited exception for malpractice claims asserted against the

specific partner(s) who committed the malpractice and arises for "any negligent or wrongful act

or misconduct committed by [a partner] or by any person under his or her direct supervision and

control ***while rendering professional services*** on behalf of [the] registered limited liability

partnership."  *Ederer*, 881 N.E.2d at 210.  Section 26(d) "allows partners to opt out from or

reduce the reach of section 26(b)'s protection from vicarious liability."[5]  *Id.*

Courts have routinely applied § 26(b) to shield LLP partners from personal liability for a

wide variety of claims arising "in tort, contract or otherwise."  *See, e.g.*, *La Rock & Perez, LLP v.

Sang Joon Sim*, 987 N.Y.S.2d 381, 381-82 (App. Div. 2014) (reversing the trial court and

granting an LLP partner's motion to dismiss a breach of contract claim that sought a share of the

fees obtained in a personal injury lawsuit because "[t]he narrow exceptions to Partnership Law §

---

[4]        A copy of the text of the statute has been provided as Exhibit 3.

[5]        *Cf. In re Thelen LLP*, 736 F.3d 213, 220 (2d Cir. 2013) ("The Partnership Law . . . sets default
requirements that come into play in the absence of an agreement[.]").

26(b)'s shield of the partners of an LLP from **direct or indirect** liability . . . do not include the LLP's inability to pay"); *Gould v. Decolator*, 994 N.Y.S.2d 368, 370 (App. Div. 2014) (dismissing fourth cause of action, including "inter alia, a claim for breach of an implied contract for legal services under quantum meruit theory" asserted against individual LLP partners); *Salazar v. Sacco & Fillas, LLP*, 980 N.Y.S.2d 484, 486-87 (App. Div. 2014) (dismissing fraud claim against an individual LLP partner); *Idearc Media LLC v. Siegel*, No. 09-CV-1090S, 2013 U.S. Dist. LEXIS 64136, at *6-7 (W.D.N.Y. May 2, 2013) (dismissing breach of contract claim against the estate of an LLP's sole owner as there were no allegations supporting the piercing of the corporate veil); *Edlinger v. United States*, No. 3:10-cv-148, 2010 U.S. Dist. LEXIS 36991, at *8 (N.D.N.Y. Apr. 14, 2010) (dismissing medical malpractice claim against a partner who did not operate on the plaintiff); *accord Grewal v. Cuneo*, No. 13-cv-6836 (RA), 2015 U.S. Dist. LEXIS 87755, at *21-26 (S.D.N.Y. July 7, 2015) (rejecting state law tort and contract claims based on a similar personal liability shield contained in Washington D.C.'s partnership statute).

As neither of the two limited exceptions apply, all of Plaintiff's claims against the Faruqis fail.

## II.    PLAINTIFF'S CLAIMS AGAINST DEFENDANTS ARE BARRED BY NEW YORK'S ATTORNEY ETHICS RULES

"[I]t is well settled that a court will not enforce a contract that violates public policy[.]" *New York State Correctional Officers & Police Benevolent Ass'n v. State*, 726 N.E.2d 462, 466 (N.Y. 1999); *see also Szerdahelyi v. Harris*, 490 N.E.2d 517, 521 (N.Y. 1986).

One well-recognized public policy is ensuring compliance with the ethics rules that govern attorneys.[6]  *See Cohen v. Lord, Day & Lord*, 550 N.E.2d 410, 410 (N.Y. 1989) (a law

---

[6]        On April 1, 2009 the Disciplinary Board of the New York Courts replaced all of the existing Disciplinary Rules and Definitions in the New York Code of Professional Responsibility with the New York Rules of Professional Conduct ("the Ethics Rules").  New York Rules of Professional Conduct, Preamble, *available at*

firm's violation of Disciplinary Rule 2-108(A) by restricting a former partner's ability to practice law in competition with the law firm was unenforceable as a violation of public policy).

The ethics rules concerning attorneys' fees are of particular concern to New York courts, which have repeatedly held that "an attorney may not collect a fee barred by the public policy expressed in the Code of Professional Responsibility[.]" *McMahon v. Evans*, 169 Misc. 2d 509, 516 (N.Y. Sup. Ct. 1996); *L.H. v. V.W.*, 171 Misc. 2d 120, 123 (N.Y. Civ. Ct. 1996) (same); *see also In re Cooperman*, 83 N.Y.2d 465, 471 (1994) (refusing to enforce nonrefundable retainer fee agreements because they clash with public policy recognizing a client's right to terminate the attorney-client relationship).[7]

Plaintiff seeks the Court's imprimatur to enforce a Commission Agreement that would require the parties to violate Rule 1.5(g) of the Ethics Rules by ordering the Defendants to ***divide the fees*** earned by the Firm in the Jefferies Case and pay 20% of those fees to Plaintiff even though she ***is not currently associated with the Firm (she quit in February 2013) nor was she associated with the Firm at the time she entered into the Agreement (she did not begin her employment until six months later in August 2007)***. *See* ¶¶12, 14, 19, 24, 25.

Absent limited exceptions, Rule 1.5(g) prohibits Defendants from sharing fees with attorneys at other law firms, stating that "[a] lawyer shall not ***divide a fee*** for legal services with another lawyer who ***is not associated in the same law firm***[.]"[8] Rule 1.5(h) makes clear that

---

https://www.nysba.org/DownloadAsset.aspx?id=50671. *Inter alia*, the Ethics Rules adopted a new numbering system (*i.e.*, Rule 1.1 *et seq.* vs. the prior system which was numbered 1-100 *et seq.*).

[7]     *Cf. Ungar v. Matarazzo Blumberg & Assocs., P.C.*, 688 N.Y.S.2d 588, 589-90 (App. Div. 1999) (concluding that the subject agreement between a nonlawyer and attorneys to split legal fees was prohibited by New York's Code of Professional Responsibility and the Judiciary Law and noting that "[a] party may not seek the assistance of the courts in enforcing an illegal contract"); *Matarazzo Blumberg & Assocs., P.C. v. Abramovitz*, 749 N.Y.S.2d 62, 62 (App. Div. 2002) ("Since the [fee-splitting] agreement is illegal and unenforceable, the Supreme Court should have granted a stay of arbitration of the claims arising out of its alleged breach.").

[8]     A copy of the text of Rule 1.5 has been provided as Exhibit 4. Rule 1.5(g) provides two limited

Rule 1.5(g) bars payment to "a lawyer formerly associated" with the Firm unless the payment is made "pursuant to a separation or retirement agreement." *See, e.g.*, *Vaccarella v. Sperling*, 960 N.Y.S.2d 53, 53 (App. Term 2012) (reversing lower court's award of fees to a firm's former attorney for a portion of fees generated from a client he introduced to the firm because it violated Rule 1.5(g)); *Sheresky v. Sheresky Aronson Mayefsky & Sloan, LLP*, 35 Misc. 3d 1201(A), 1201A (N.Y. Sup. Ct. 2011) (rejecting a claim under the unfinished business doctrine because "payment to a lawyer formerly associated with a law firm is not prohibited pursuant to a separation agreement or retirement agreement (DR 1.5 [h]), however no such agreement existed here."); *see also* Ex. 5, Nassau Cnty. Bar, Op. No. 1994-2 at 2 ("Any sharing of the legal fee with a former law firm must be accomplished in compliance with DR 2-107(A) unless it is pursuant to an agreement to share the fees as a result of a separation from employment, pursuant to DR 2-107(B).").[9]

Plaintiff alleges she entered into the Commission Agreement in February 2007 (¶11) *while she was still employed at Labaton* (¶¶9, 14) and did not commence employment at the Firm until six months later in August 2007 (¶14). Thus, Plaintiff was not associated with the Firm *when she entered into the Commission Agreement* and the Agreement is therefore unenforceable *ab initio*. Alternatively, Plaintiff quit the Firm on February 11, 2013 (¶¶19-20),

_____

circumstances under which a fee may be divided, neither of which apply here: (1) "the division is in proportion to the services performed by each lawyer" or (2) "by a writing given to the client, each lawyer assumes joint responsibility for the representation[.]" Under both circumstances, however, the fee splitting arrangement will only be valid if "the client agrees to employment of the other lawyer after a full disclosure that a division of fees will be made, including the share each lawyer will receive, and the client's agreement is confirmed in writing[,]" *and* "the total fee is not excessive." Plaintiff does not allege that she performed any services on the Jefferies Case—let alone 20% of the Firm's services—or that she expressly assumed any responsibility for the representation of the Fund after she resigned from the Firm. Furthermore, Plaintiff does not allege that the Fund was informed that the fees for the Jefferies Case would be shared with Plaintiff; nor does she allege that the Fund confirmed this understanding in writing; nor does she allege that her $800,000 fee is reasonable given that she did not do any work on the Jefferies Case.

[9]         A copy the text of DR 2-107, which existed at the time the Commission Agreement was entered into, is available in Exhibit 6. Whether governed by DR 2-107 or current Rule 1.5, the outcome is the same for present purposes and Defendants have treated the rules interchangeably herein.

more than two years prior to the approval of the settlement in the Jefferies Case and the court's award of fees (¶¶21, 24).  Consequently, Defendants are not allowed to divide fees with Plaintiff because—***unlike other attorneys who left the Firm***—Plaintiff did not enter into a separation agreement, having elected instead to quit the Firm without notice in a fit of pique.

Accordingly, New York's attorney ethics rules prohibit Defendants from paying Plaintiff any portion of the fees the Firm earned in the Jefferies Case and all of Plaintiff's claims fail.

## III.   PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT

Plaintiff's breach of contract claim also fails because (1) it is barred by New York's Statute of Frauds; and (2) Plaintiff was not in privity with the Faruqis.

### A.   New York's Statute Of Frauds Bars The Commission Agreement

Pursuant to New York's Statute of Frauds, an agreement must be in writing if by its terms it cannot be performed within one year from its making.  N.Y. Gen. Oblig. Law § 5-701(a)(1) (Consol. 2015).  Where an agreement is for an indefinite duration, with no provision for termination within one year from when it was made, it is subject to the Statute of Frauds and will not be enforced unless it is in writing.  *D & N Boening, Inc. v. Kirsch Beverages, Inc*., 472 N.E.2d 992, 995 (N.Y. 1984).

Agreements to pay commissions to an at-will employee "generally are enforceable while the [plaintiff] is still employed by the defendant, since employment is generally terminable at will."[10]  *Niyazov v. Park Fragrance LLC*, No. 156476/2013, 2014 N.Y. Misc. LEXIS 1073, at *1 n.1 (Sup. Ct. Mar. 7, 2014) (citing *Bennett v. Atomic Prods. Corp.*, 903 N.Y.S.2d 154 (App. Div. 2010)).

However, "an agreement to continue to pay such commissions ***after the termination of***

---

[10]    *See also Rooney v. Tyson*, 697 N.E.2d 571, 580 (N.Y. 1998) (At "the core of the at-will doctrine is the 'unfettered' right held by the parties to terminate the employment relationship at any time for any reason not otherwise prohibited by law or public policy.").

*the [plaintiff's] employment*," as is the case here, "falls within the statute of frauds," because the "performance and the duration of the obligation to perform is dependent, not on the will of the parties to the contract, but rather, on the will of the third-party customer." *Niyazov*, 2014 N.Y. Misc. LEXIS 1073, at *1 n.1; *accord Strauss v. Fleet Mortg. Corp.*, 282 A.D.2d 736, 736 (N.Y. App. Div. 2001) (finding that agreement to pay commissions not earned during the time of plaintiff's employment could not be performed within a year and "had to be in writing pursuant to the Statute of Frauds"); *Levine v. Zadro Prods.*, No. 02 Civ. 2838 (GBD), 2003 U.S. Dist. LEXIS 9637, at *4 (S.D.N.Y. June 9, 2003) (finding alleged agreement to pay commissions beyond plaintiff's termination was barred by the Statute of Frauds).

Plaintiff alleges that her Commission Agreement entitles her to 20% "of ***any*** fees earned by the Firm ***in connection with clients she generated***."  ¶12.  Plaintiff further alleges she was entitled to a commission whether or not she was employed at the Firm and whether or not she performed any work for the Firm or the client (besides "generating" the client).  ¶23.  Plaintiff additionally alleges, "Defendants breached their agreement to pay Plaintiff twenty (20) percent of the fees earned in connection with clients Plaintiff generated, ***including*** the fees earned by the Firm in the Jeffries [sic] Litigation."  ¶27.  Thus, according to Plaintiff, the Commission Agreement survived her "resignation" from the Firm as well as her decision not to work on the Jefferies Case.  Indeed, there are no temporal or other limitations or boundaries to the Agreement, and Defendants' potential liability extends indefinitely for 20% of "any fees" the Firm earns "in connection with clients she generated."  ¶¶12, 23.

As explained by the court in *Marciano v. Crowley*, No. 08-CV-305-JTC, 2009 U.S. Dist. LEXIS 89450, at *12-13 (W.D.N.Y. Sept. 28, 2009), "[u]nder New York law, a commission sales arrangement that extends beyond the employee's termination ***or that has no specific time***

*frame* has repeatedly been held to be one that cannot be performed within one year." In *Marciano*, the court was asked to determine whether the parties' agreement that plaintiffs would receive "75% of the . . . Commission on sales of . . . products brought about by the efforts of Plaintiffs" was unenforceable under the Statute of Frauds. *Id.* at *11-12. The court held that the agreement was subject to the Statute of Frauds because, "[d]espite the termination of the agreement between the parties, if [the customer] were to order additional [products] as a result of plaintiffs' efforts, [the defendant] would be liable to plaintiffs for commissions, and that liability extends indefinitely. Thus, the termination of the agreement did not extinguish all liability for future commissions." *Id.* at *12. The court rejected the plaintiffs' argument that the at-will relationship took the oral agreement outside the Statute of Frauds because, "[t]here [was] nothing in the complaint to indicate that defendants would not be liable for commissions on further sales of [the products] to [the customer] or any other customer that arose as a result of the efforts of plaintiffs." *Id.* at *13-14. In other words, in determining whether a defendant's liability extends indefinitely for the purposes of the Statute of Frauds, the test is a theoretical one and not on an as-applied basis. *See Martocci v. Greater N.Y. Brewery, Inc.*, 92 N.E.2d 887, 889 (N.Y. 1950) ("The endurance of defendant's liability is the deciding factor. The mere cessation of orders from [customer] to defendant would not alter the contractual relationship between the parties; it would not constitute performance; plaintiff would still be in possession of his contractual right, though it may have no monetary value, immediately or ever.").

The policy behind this rule was succinctly stated in *Levine*, 2003 U.S. Dist. LEXIS 9637, at *10 n.2:

> "The whole policy of the Statute of Frauds is to establish the existence of a contract the effect of which extends beyond a year," *Urvant v. IMCO Poultry, Inc.*, 325 F. Supp. 677, 686 (E.D.N.Y. 1970). This is especially the case in situations involving ongoing commissions. As the New York Court of Appeals

has pointed out, commission agreements like the one alleged here present a situation where "plaintiffs' part of the agreement [is fully] performed when the customer [is] procured." *North Shore Bottling Co. v. C. Schmidt & Sons, Inc.*, 22 N.Y.2d 171, 239 N.E.2d 189, 192 N.Y.S.2d 86 (N.Y. 1968). Where no "continuing performance on the part of the plaintiff" is involved, there exists a greater opportunity for fraud. *Id.*

Consequently, in *Levine* the court granted defendants' motion to dismiss where the defendants could have terminated the plaintiffs' role as agent within a year but could not have terminated the defendants' obligation to pay commissions. 2003 U.S. Dist. LEXIS 9637, at *10-14 ("Even if these clients do not place orders in a given year, they may do so in the future and plaintiffs would continue to be entitled to commissions on those later orders."); *see also Thiam v. Am. Talent Agency, Inc.*, No. 11 Civ. 1465 (GBD), 2012 U.S. Dist. LEXIS 46279, at *9, *11-12 (S.D.N.Y. Mar. 27, 2012) (dismissing defendant ATA's breach of contract counterclaim where "the [alleged] oral agreement require[d] [plaintiff] Akon to pay ATA commissions on any [of Akon's subsequent] performance[s] booked directly through one of ATA's introductions" because it "call[ed] for an indefinite obligation and [was], therefore, not fully performable within one year").

Moreover, the unique nature of the Firm's attorney-client relationship with the Fund is such that, even with respect to the Jefferies Case, the customer is essentially placing a new order every day because a client may terminate a contingency fee agreement ***at any time***, leaving the lawyer without a cause of action for breach of contract. *See King v. Fox*, 851 N.E.2d 1184, 1191-92 (N.Y. 2006). Indeed, contingency fees—by definition—are not earned until the contingency occurs. *See* 7 Am. Jur. 2d *Attorneys At Law* § 258 (2016) ("The happening of the contingency is a condition precedent to the right of the attorney to recover for his or her services, and the precise event which was contemplated must happen."); *cf. Hess v. Kanoski & Assocs.*, No. 3:09-cv-03334-SLD-JAG, 2014 U.S. Dist. LEXIS 42584, at *20 (C.D. Ill. Mar. 28, 2014)

(finding that a lawyer was not entitled to bonuses based on cases resolved after his termination from defendant law firm "because the contingency fees upon which his bonus depends were not yet 'generated' through the dispositions of those cases"), *aff'd sub nom, Hess v. Bresney*, 784 F.3d 1154 (7th Cir. 2015). Here, the Firm had not earned any Fees at the time Plaintiff quit because the relevant contingency had not yet occurred—namely, the Jefferies Case had not yet settled. Thus, Plaintiff's Commission Agreement is even more susceptible to the policy concerns underlying the Statute of Frauds given that the Firm had not earned ***any*** fees at the time Plaintiff quit.[11]

Therefore, the Commission Agreement is subject to the Statute of Frauds, and it "is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith . . ." N.Y. Gen. Oblig. Law § 5-701(a) (Consol. 2015). Plaintiff claims that her entitlement to 20% of "any fees" earned by the Firm in connection with clients she generated was part of a handshake agreement. ¶12. Nowhere in the Complaint does Plaintiff allege that the Commission Agreement was ever reduced to writing, let alone "subscribed" by any of the Defendants. The Commission Agreement is therefore barred by the Statute of Frauds and is unenforceable. *See, e.g.*, *Marciano*, 2009 U.S. Dist. LEXIS 89450, at *13-14 (dismissing breach of contract claims where the alleged oral agreement was found to be unenforceable under the Statute of Frauds); *Levine*, 2003 U.S. Dist. LEXIS 9637, at *15 (granting defendants' motion to dismiss the breach of contract claims where the Statute of Frauds rendered the alleged oral agreement unenforceable).

---

[11]     Additionally, in Delaware class action litigation, like the Jefferies Case, attorneys' fees are subject to court approval. *See Ams. Mining Corp. v. Theriault*, 51 A.3d 1213, 1255 (Del. 2012) ("The determination of any attorney fee award is a matter within the sound judicial discretion of the Court of Chancery."); *Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1165 (Del. 1989) (noting that the Delaware Court of Chancery "enjoys a level of discretion" in fixing the amount of an award for counsel fees). As a result, the Firm did not earn any fees from the Jefferies Case until the Delaware court issued its June 5, 2015 decision awarding the Firm attorneys' fees (¶24), over two years after Plaintiff quit the Firm and the Fund (¶19).

Accordingly, Plaintiff's breach of contract claim fails.

## B. Plaintiff Was Not In Privity With The Faruqis

It is well-settled law that only a party to a contract can be held liable for a breach of that contract. *Stanley Agency v. Behind the Bench (national Basketball Wives Association)*, 23 Misc. 3d 1107(A), 1107A (N.Y. Sup. Ct. 2009) (citing *Black Car & Livery Ins., Inc. v. H&W Brokerage, Inc.*, 813 N.Y.S.2d 751 (App. Div. 2006)); *see also Smith v. Fitzsimmons*, 584 N.Y.S.2d 692, 695 (App. Div. 1992) ("As a general rule, privity or its equivalent remains the predicate for imposing liability for nonperformance of contractual obligations."); *St. Laurie Ltd. v. Yves St. Laurent Am., Inc.*, No. 13-CV-6857 (DAB), 2015 U.S. Dist. LEXIS 42621, at *15 (S.D.N.Y. Mar. 25, 2015) ("It is hornbook law that a non-signatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract.").

Although Plaintiff attempts to assert a claim for breach of contract against all Defendants (¶26), Plaintiff's allegations conclusively show that the alleged Agreement was between Plaintiff and the Firm—not between Plaintiff and the Faruqis:

> ". . . Plaintiff finally agreed to join the *Firm* as an at-will, non-equity employee/partner . . . " (¶11)

> ". . . the parties discussed and agreed upon the terms of Plaintiff's employment at the *Firm* . . . " (¶12)

> ". . . the *Firm* paid her twenty (20) percent of the fees it earned…." (¶16)

For that matter, Plaintiff undoubtedly knows from which of the Defendants' accounts her salary and bonus checks were issued and whom she reported to the Internal Revenue Service as her employer.

Tellingly, Plaintiff is well aware that the Faruqis were not parties to the contract, as she also asserts a claim for intentional interference with contractual relations (Count V) against the

Faruqis (¶¶40-41), claiming that they intentionally interfered with her Agreement **with the Firm**, which of course they could not do if they were, in fact, parties to the contract. *See Rockland Exposition, Inc. v. Alliance of Auto. Serv. Providers of N.J.*, 894 F. Supp. 2d 288, 336-337 (S.D.N.Y. 2012) ("A claim for tortious interference with a contract must be based on a non-party improperly interfering with a contract between two contracting parties, and cannot be based on the actions of a director or officer in his official capacity.").

At most, Plaintiff alleges that Nadeem, as an equity partner of the Firm (¶6), acted as an agent for the Firm in entering into the alleged contract. The "settled rule" is "that an agent for a disclosed principal will not be personally bound unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal." *Salzman Sign Co. v. Beck*, 176 N.E.2d 74, 76 (N.Y. 1961); *see also Yellow Book Sales & Distrib. Co., Inc. v. On Call Plumbing & Heating, Inc.*, 952 N.Y.S.2d 615, 616 (App. Div. 2012). Plaintiff has alleged no "clear and explicit evidence" that Nadeem intended to be personally liable for the Firm's Agreement with Plaintiff.

Plaintiff fails to allege any conduct Lubna engaged in to establish a claim against her for breach of contract, much less "clear and explicit evidence" that Lubna intended to be personally liable for the Firm's Agreement with Plaintiff. "[W]hen a plaintiff makes no attempt, in its pleadings, to specifically allege what particular acts were taken by which of the defendants, dismissal of the case is appropriate." *Saunders v. Bank of Am.*, No. 12 Civ. 9201 (GBD) (RLE), 2014 U.S. Dist. LEXIS 134142, at *13-14 (S.D.N.Y. Aug. 29, 2014), *adopted by* 2014 U.S. Dist. LEXIS 132960 (S.D.N.Y. Sept. 22, 2014); *see also Appalachian Enters. v. ePayment Solutions Ltd.*, No. 01 CV 11502 (GBD), 2004 U.S. Dist. LEXIS 24657, at *21 (S.D.N.Y. Dec. 8, 2004) ("A plaintiff fails to satisfy [R]ule 8 [ ] where the complaint lumps all the defendants together

and fails to distinguish their conduct because such allegations fail to give adequate notice to the defendants as to what they did wrong.").

In short, the Faruqis were not parties to the agreement. *See Cruz v. NYNEX Info. Res.*, 703 N.Y.S.2d 103, 107 (App. Div. 2000) (finding that the lower court "correctly dismissed" plaintiffs' breach of contract claims against defendant where defendant "was merely the agent of a disclosed principal and, thus, had no personal liability under the contract"); *Winkler v. Friedman*, No. 12-CV-3893, 2013 U.S. Dist. LEXIS 109520, at *2-3 (E.D.N.Y. Aug. 5, 2013) (dismissing breach of contract claim against individual defendant where nothing in the complaint suggested that he "acted other than in his capacity as CEO" in his dealings with the plaintiff).

Accordingly, Plaintiff's breach of contract claim against the Faruqis fails.

## IV.    PLAINTIFF FAILS TO STATE A CLAIM FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

Plaintiff's intentional interference with contractual relations claim also fails for the following reasons: (1) a valid and enforceable contract never existed; (2) assuming *arguendo* an enforceable agreement once existed, Plaintiff terminated the agreement when she quit; and (3) the Faruqis, as agents of the Firm, cannot be held liable for inducing the Firm's alleged breach.[12]

First, in order to be liable for intentionally interfering with a contract, there must be "an ***existing***, ***enforceable*** contract" to breach. *Steinberg v. Schnapp*, 899 N.Y.S.2d 167, 170 (App. Div. 2010) ("[W]here ***there is an existing, enforceable contract*** and a defendant's deliberate interference results in a breach of that contract, a plaintiff may recover damages for tortious interference with contractual relations[.]") (quoting *NBT Bancorp v. Fleet/Norstar*

---

[12]         "[U]nder New York law, [t]ortious interference with contract requires [1] the existence of a valid contract between the plaintiff and a third party, [2] defendant's knowledge of that contract, [3] defendant's intentional procurement of the third-party's breach of the contract without justification, [4] actual breach of the contract, and [5] damages resulting therefrom." *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 F. App'x 102, 104 (2d Cir. 2012) (quoting *Lama Holding Co. v. Smith Barney*, 668 N.E.2d 1370, 1375 (N.Y. 1996)).

*Fin. Group*, 664 N.E.2d 492, 496 (N.Y. 1996)). In this case, there never was an enforceable

Commission Agreement between the Firm and Plaintiff for the reasons discussed *supra* in

Sections II & III; *see Mobile Data Shred, Inc. v. United Bank of Switz.*, No. 99 Civ. 10315

(SAS), 2000 U.S. Dist. LEXIS 4252, at *23 n.9 (S.D.N.Y. Apr. 3, 2000) ("[C]ourts have

consistently refused to recognize claims of tortious interference when the underlying contract is

unenforceable for failure to satisfy the Statute of Frauds.").

Second, assuming *arguendo*, that the Commission Agreement was valid at the time it was

formed in 2007, the agreement ended on February 11, 2013 when Plaintiff quit the Firm. ¶¶19,

20. It follows logically that when "the contract had expired before the alleged interference" a

cause of action for intentional interference fails. *Willis Re Inc. v. Hudson*, 816 N.Y.S.2d 43, 45

(App. Div. 2006); *Fayard v. Henry Holt & Co.*, 726 F. Supp. 438, 446 (S.D.N.Y. 1989)

("Because there is no basis for concluding that Holt continued to have a valid contract to publish

the autobiography in 1986, no claim against Fayard for tortious interference with this contract

can be maintained.").[13] Thus, any non-remittance of payment to Plaintiff was justifiable.

Third, "[a] claim for tortious interference with a contract must be based on a *non-*

*party* improperly interfering with a contract between two contracting parties[.]" *Rockland*

*Exposition, Inc.,* 894 F. Supp. 2d at 336-37 (emphasis in original); *accord Finley v. Giacobbe*, 79

F.3d 1285, 1295 (2d Cir. 1996). This also holds true in employment situations as "[i]t is well

settled that [a]n agent cannot be held liable for inducing [its] principal to breach a contract with a

third person, at least where [it] is acting on behalf of [its] principal and within the scope of [its]

authority[.]" *Devash LLC v. German Am. Capital Corp.*, 959 N.Y.S.2d 10, 15 (App. Div. 2013)

---

[13]        For example, in *International Jet Markets v. Simat, Helliesen & Eichner*, No. 95 Civ. 7967 (TPG), 1997
U.S. Dist. LEXIS 12265, at *20-21 (S.D.N.Y. Aug. 18, 1997), the court found that since the contractual relationship
between the plaintiff and Valujet expired on March 25, 1995, there "was no wrongdoing by either Valujet or
defendants in dealing as they did subsequent to March 25."

(quoting *Nu-Life Constr. Corp. v. Board of Educ. of City of N.Y.*, 611 N.Y.S.2d 529, 530 (App. Div. 1994)); *accord Minetos v. City Univ. of N.Y.*, 925 F. Supp. 177, 187-88 (S.D.N.Y. 1996). "In order to show that a defendant-employee is a third party, a plaintiff must show that the defendant-employee has exceeded the bounds of his or her authority." *Thompson v. Bosswick*, 855 F. Supp. 2d 67, 88 (S.D.N.Y. 2012) (citing *Finley*, 79 F.3d at 1295); *see also Mobile Data Shred, Inc.*, 2000 U.S. Dist. LEXIS 4252, at *23 n.9 ("Even if the employee or officer acted in bad faith, the officer or employee will not be held liable absent a showing of an independent tort or actions in furtherance of a personal interest.").

Plaintiff asserts her intentional interference claim against the Faruqis (¶40), who, as managing partners of the Firm, are both agents of the Firm and are authorized to act on its behalf (¶¶6-8, 12). Plaintiff makes clear that pursuant to their roles as managing partners of the Firm, the Faruqis were tasked with, among many other things, hiring employees and determining their compensation and benefits, establishing fee-splitting arrangements, and retaining clients on behalf of the Firm. ¶¶8, 12-14, 16-18. The Complaint is devoid of any allegations that Nadeem somehow acted outside of his capacity as a managing partner of the Firm when he informed Plaintiff that the Firm would not be paying her a portion of the fees the Firm earned in the Jefferies Case. *See* ¶¶22, 23. With respect to Lubna, the Complaint does not allege facts demonstrating that she was involved in the decision to deny Plaintiff a portion of the Jefferies fees. Even if she were, any such decision would have been consistent with her role as a managing partner of the Firm.

Accordingly, Plaintiff's claim for intentional interference with contractual relations fails because the Faruqis were non-party agents with respect to Plaintiff's expired, unenforceable contract with the Firm.

## V. PLAINTIFF FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT

Plaintiff's unjust enrichment claim also fails for the following reasons: (1) it is duplicative of her breach of contract claim; (2) Plaintiff was paid a sizeable salary up until the day she quit; and (3) it is barred by the Statute of Frauds.[14]

First, the New York Court of Appeals has held that "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012) ("[U]njust enrichment is not a catchall cause of action to be used when others fail."). Plaintiff's "unjust enrichment claim is duplicative" of her other claims and "if [P]laintiff's other claims are defective, an unjust enrichment claim cannot remedy the defects." *Id.* As Plaintiff's unjust enrichment claim is "indistinguishable from [her] claim for breach of contract," *Martin H. Bauman Assoc., Inc. v. H & M Int'l Transp., Inc.*, 567 N.Y.S.2d 404, 408 (App. Div. 1991), and "seeks precisely the same damages," it must be dismissed as duplicative. *Benham v. eCommission Solutions, LLC*, 989 N.Y.S.2d 20, 21 (App. Div. 2014); *see* ¶¶28, 36; *see also Brandeis Sch., Inc. v. Yakobowicz*, 15 N.Y.S.3d 64, 65-66 (App. Div. 2015) (dismissing plaintiff's claim for breach of contract, and also dismissing plaintiff's unjust enrichment claim because the recovery sought, payment for tuition, was governed by the alleged contract).

Second, Plaintiff cannot assert that the Firm was unjustly enriched at her expense in light of the $250,000 annual salary she was paid. ¶12. "[T]he law is clear that a plaintiff may not allege that his former employer was 'unjustly' enriched at his expense when the employer compensated plaintiff by paying him a salary." *Levion v. Société Générale*, 822 F. Supp. 2d 390,

---

[14] To state a claim for unjust enrichment under New York law, a plaintiff must establish that the defendant was enriched at the plaintiff's expense, and "the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff." *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 519 (2d Cir. 2001).

405 (S.D.N.Y. 2011), *aff'd*, 503 F. App'x 62 (2d Cir. 2012); *accord Karmilowicz v. Hartford Fin. Servs. Grp.*, No. 11 Civ. 539 (CM) (DCF), 2011 U.S. Dist. LEXIS 77481, at *31-32 (S.D.N.Y. July 14, 2011) ("Defendant compensated Plaintiff for his performance by paying him a salary, which means Defendant did not benefit unfairly from Plaintiff's work," warranting dismissal of plaintiff's unjust enrichment claim), *aff'd*, 494 F. App'x 153 (2d Cir. 2012); *Hughes v. Standard Chartered Bank PLC*, No. 09 Civ. 4595 (PKC), 2010 U.S. Dist. LEXIS 38871, at *20-21 (S.D.N.Y. Apr. 14, 2010) (finding that "[p]laintiff's claim that the defendants were unjustly enriched because they 'wrongfully withheld' his 2008 bonus also fails as a matter of law" where the complaint does not allege that plaintiff rendered "services to defendants that were beyond the scope" of his employment duties or that his salary "did not constitute the reasonable value of his services"); *Lamb v. Money Transfer Sys.*, No. 12-CV-6584 CJS, 2013 U.S. Dist. LEXIS 132007, at *38-40 (W.D.N.Y. Sept. 13, 2013) (dismissing plaintiff at-will employee's unjust enrichment claim where his salary was paid "up until the date that [d]efendant terminated his employment"). Therefore, since "[Plaintiff] was compensated for her services, she cannot be said to have unjustly enriched Defendants." *Scarpinato v. 1770 Inn, LLC*, No. 13-CV-0955(JS)(SIL), 2015 U.S. Dist. LEXIS 105428, at *14 (E.D.N.Y. Aug. 11, 2015) (dismissing plaintiff's unjust enrichment claim with prejudice).

Third, Plaintiff cannot use her unjust enrichment claim to avoid the application of New York's Statute of Frauds. In New York, "[i]t is well-settled . . . that a plaintiff may not assert an unjust enrichment claim to circumvent the Statute of Frauds." *Abed v. Azar*, No. 08 Civ. 4404 (NRB), 2010 U.S. Dist. LEXIS 1649, at *16 (S.D.N.Y. Jan. 5, 2010) (citing *Ellis v. Provident Life & Accident Ins. Co.*, 3 F. Supp. 2d 399, 412 (S.D.N.Y. 1998), *aff'd*, No. 98-7733, 1999 U.S. App. LEXIS 1736 (2d Cir. Feb. 3, 1999)); *Bonsey v. Kates*, No. 13 Civ. 2708 (RWS), 2013 U.S.

Dist. LEXIS 119571, at *20 (S.D.N.Y. Aug. 17, 2013) (same) (collecting cases).

Because Plaintiff's unjust enrichment claim is based on the same alleged promise underlying her breach of contract claim, it "depend[s] upon proof of an unenforceable contract," and must be dismissed. *Zeising v. Kelly*, 152 F. Supp. 2d 335, 345 (S.D.N.Y. 2001) (dismissing unjust enrichment claims where the breach of contract claim was barred by the Statute of Frauds); *see also Strauss*, 282 A.D.2d at 736-37 (finding that the lower court "properly dismissed" plaintiff's unjust enrichment claim seeking commissions barred by the statute of frauds); *Tallini v. Business Air, Inc.*, 538 N.Y.S.2d 664, 666 (App. Div. 1989) ("[P]laintiff's claim that he was denied commissions which he was entitled to under a theory of unjust enrichment depends on proof of the oral contract and therefore is also barred by the Statute of Frauds.").

Accordingly, Plaintiff's unjust enrichment claim fails.

## VI. PLAINTIFF FAILS TO STATE A CLAIM FOR ESTOPPEL

Plaintiff's promissory estoppel claim also fails for the following reasons: (1) it is duplicative of her breach of contract claim; (2) Plaintiff cannot establish reasonable reliance because her employment was at-will; and (3) Plaintiff has failed to allege an unconscionable injury, which is required to enforce an agreement that is otherwise rendered unenforceable by the Statute of Frauds.[15]

First, Plaintiff's promissory estoppel claim is not based on any duty independent of the alleged Commission Agreement. Where "a plaintiff also alleges breach of a contract, a promissory estoppel claim is duplicative of a breach of contract claim unless the plaintiff alleges

---

[15]    To state a cause of action for promissory estoppel under New York law, a plaintiff must allege the following three elements: "1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance." *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000) (Sotomayor, J.).

that the defendant had a duty independent from any arising out of the contract." *Underdog Trucking, LLC v. Verizon Servs. Corp*, No. 09 Civ. 8918 (DLC), 2010 U.S. Dist. LEXIS 72642, at *18 (S.D.N.Y. July 20, 2010); *accord Bd. of Trs. ex rel. The Gen. Ret. Sys. of Detroit v. BNY Mellon, N.A.*, No. 11 Civ. 6345 (RJS), 2012 U.S. Dist. LEXIS 132724, at *20 (S.D.N.Y. Sept. 10, 2012) (dismissing estoppel claim where "the alleged promises are duplicative of [p]laintiffs' contract claim and depend upon the same duties that underlie that cause of action"); *Simpri v. City of N.Y.*, No. 00 Civ. 6712 (SAS), 2003 U.S. Dist. LEXIS 23266, at *27-28 (S.D.N.Y. Dec. 30, 2003) (Promissory estoppel is not the appropriate remedy where estoppel claim is based on promises "consistent with the undertakings contained in the contract[.]"). The alleged promise Plaintiff seeks to enforce is solely predicated on the same contractual terms Defendants purportedly breached. ¶¶25, 30. Therefore, Plaintiff's promissory estoppel claim is duplicative of her breach of contract claim and thus fails. *See, e.g.*, *Bd. of Trs.*, 2012 U.S. Dist. LEXIS 132724, at *18-20; *Susman v. Commerzbank Capital Mkts. Corp.*, 945 N.Y.S.2d 5, 7-8 (App. Div. 2012) (promissory estoppel cause of action properly dismissed as duplicative of plaintiff's breach of contract claim).

Second, under New York law, at-will employees cannot establish reasonable reliance on promises arising out of at-will employment agreements. *See, e.g.*, *Hobler v. Hussain*, 975 N.Y.S.2d 212, 215 (App. Div. 2013); *Marino v. Oakwood Care Ctr.*, 774 N.Y.S.2d 562, 563 (App. Div. 2004) ("[S]ince the plaintiff was offered only at-will employment, she cannot establish reasonable reliance, a necessary element to recover damages on [a theory] of . . . promissory estoppel."); *Arias v. Women in Need, Inc.*, 712 N.Y.S.2d 103, 103 (App. Div. 2000) ("Plaintiff could not establish the reasonable reliance element since the offered employment was at-will."); *Mayer v. Publishers Clearing House*, 205 A.D.2d 506, 507 (N.Y. App. Div. 1994)

("That the defendant promised the plaintiff employment and suggested some terms of employment which led the plaintiff to leave his former job does not constitute promissory estoppel."). Plaintiff's conclusory assertions of reliance cannot obscure her admission that her employment at the Firm was at-will. ¶¶11, 31. In fact, Plaintiff took advantage of her at-will agreement, and quit the Firm without notice in 2013. ¶¶19-20. Plaintiff cannot sufficiently plead the reasonable reliance element of her promissory estoppel claim as a result.

Third, where the alleged agreement is barred by New York's Statute of Frauds, plaintiff must also "demonstrate unconscionable injury, *i.e.*, injury beyond that which flows naturally (expectation damages) from the non-performance of the unenforceable agreement." *Merex A.G. v. Fairchild Weston Sys.*, 29 F.3d 821, 826 (2d Cir. 1994); *accord Cacchillo v. Insmed, Inc.*, 551 F. App'x 592, 595 (2d Cir. 2014) ("When promissory estoppel is asserted to overcome a defense based on the Statute of Frauds, an unconscionable injury is required under New York law.").

Plaintiff's alleged injury, the loss of her cut of future fees from a client she alleges she generated, "flows naturally . . . from the non-performance of the unenforceable agreement" and therefore is not unconscionable. *Merex*, 29 F.3d at 826. Further, from 2007 to 2013, Plaintiff received a generous salary and bonuses until her resignation from the Firm (¶¶12, 16, 19-20). Since Plaintiff "derived substantial revenues over the course of many years" she "did not suffer unconscionable injury[.]"[16] *AHA Sales, Inc. v. Creative Bath Prods., Inc.*, 867 N.Y.S.2d 169, 181 (App. Div. 2008) ("It appears that, here, the plaintiff did not suffer unconscionable injury since it derived substantial revenues over the course of many years in reliance on the alleged representations by [defendants].").

As one court in the District appositely noted:

---

[16]      *See also Ginsberg v. Fairfield-Noble Corp.*, 440 N.Y.S.2d 222, 224-25 (App. Div. 1981) (where plaintiff asserted promissory estoppel claim on the basis that he was discharged soon after introducing defendants to new business contacts, accepting plaintiff's claims would render the statute of frauds "a nullity").

New employees commonly work hard and use their preexisting business contacts at their new jobs. If terminating employees under such ordinary circumstances were sufficiently 'unconscionable' to support a promissory estoppel claim, then promissory estoppel would not be "reserved for a limited class of cases" as the Second Circuit has required. *Philo Smith & Co.* [*v. USLIFE Corp.*, 554 F.2d 34, 36 (2d Cir. 1977)]. Particularly for ***sophisticated businesspersons like the Plaintiff***, *Ginsberg*, [ ] 440 N.Y.S.2d at 225, promissory estoppel is unavailable absent more egregious allegations.

*Stillman v. Townsend*, No. 05 Civ. 6612 (WHP), 2006 U.S. Dist. LEXIS 50770, at *14-15

(S.D.N.Y. July 26, 2006).

Accordingly, Plaintiff's promissory estoppel claim fails.

## VII.    PLAINTIFF FAILS TO STATE A CLAIM FOR CONVERSION

Plaintiff's conversion claim also fails because: (1) it is duplicative of her breach of

contract claim, and (2) she never had "ownership, possession or control" of the converted funds

***prior to the conversion***.

First, Plaintiff's "conversion claim must fail because it merely recasts [her] breach of

contract claim" as one for conversion. *Nasso v. Bio Reference Labs., Inc.*, 892 F. Supp. 2d 439,

454 (E.D.N.Y. 2012). "It is settled however, that a claim of conversion cannot be predicated on

a mere breach of contract." *MBL Life Assurance Corp. v. 555 Realty Co.*, 658 N.Y.S.2d 122,

124 (App. Div. 1997). *See, e.g.*, *Ofer v. Sirota*, 984 N.Y.S.2d 312, 314 (App. Div. 2014) ("The

conversion claim . . . fails because such a cause of action cannot be predicated on a mere breach

of contract, and no independent facts are alleged giving rise to tort liability."); *Kopel v.

Bandwidth Tech. Corp.*, 868 N.Y.S.2d 16, 17 (App. Div. 2008) (same); *Richbell Info. Servs. v.

Jupiter Partners, L.P.*, 765 N.Y.S.2d 575, 590 (App. Div. 2003) (Plaintiff's conversion action

"while satisfying the technical elements of that tort [ ], was properly dismissed as duplicative of

the insufficient contract claims."); *Fesseha v. TD Waterhouse Investor Servs.*, 761 N.Y.S.2d 22,

24 (App. Div. 2003).

Second, a plaintiff bringing a conversion claim over money "must allege that [s]he had ownership, possession, or control of the money **before its conversion**." *Bank of Am. Corp. v. Braga Lemgruber*, 385 F. Supp. 2d 200, 222-23 (S.D.N.Y. 2005). In other words, the money had to have been Plaintiff's in the first place. Plaintiff acknowledges that the "Fund . . . **retain[ed] [the Firm]** to proceed with litigation against Jefferies . . . ." ¶17. After the Jefferies case settled, it was the Firm that received the court-approved fees—not Plaintiff. ¶24. Consequently, Plaintiff's conclusory allegation that she "has a clear interest in her rightful portion of the fees," (¶38) "is, without more, insufficient to survive a motion to dismiss." *Bank of Am. Corp.*, 385 F. Supp. 2d at 222-23 ("Nowhere in their Complaint do [p]laintiffs sufficiently allege that they had ownership, possession, or control of the [money] before the alleged conversion."); *see, e.g.*, *DDR Constr. Servs. v. Siemens Indus.*, 770 F. Supp. 2d 627, 661 (S.D.N.Y. 2011) ("[T]hough the [agreement] might have granted [plaintiff] some contractual right to eventual distribution of [defendant's] profits, [plaintiff] never had control or possession of those funds[.]"); *ESI, Inc. v. Coastal Power Prod. Co.*, 995 F. Supp. 419, 433 (S.D.N.Y. 1998) (dismissing conversion claim where plaintiff "never had ownership, possession or control of the money it alleges [was] converted[,]" and stating that plaintiff's "claim[ ] that it had an ownership interest by virtue of a contract and that defendants' breach of contract denied it of that interest . . . cannot be redressed via a conversion claim); *Fiorenti v. Cent. Emergency Physicians, PLLC*, 762 N.Y.S.2d 402, 404 (App. Div. 2003) ("The [trial court] should have dismissed the plaintiffs' cause of action alleging conversion, since the plaintiffs never had title, possession, or control of the funds alleged to have been converted.").

Accordingly, Plaintiff's conversion claim fails.

## VIII. PLAINTIFF FAILS TO STATE A CLAIM FOR AN ACCOUNTING

Plaintiff's accounting claim also fails because under New York law, an at-will, non-

equity employee is not entitled to an accounting even if the employee had the title of partner. *See, e.g.*, *Mazur v. Greenberg*, 488 N.Y.S.2d 397, 398 (App. Div. 1985) (finding that former associate who was allowed to hold himself out as a partner, who shared in firm's annual profits, but was not responsible for firm's rents or losses and exercised minimal control over firm's business, was not entitled to an accounting), *aff'd sub nom.*, 489 N.E.2d 764 (N.Y. 1985); *D'Esposito v. Gusrae, Kaplan & Bruno PLLC*, 844 N.Y.S.2d 214, 215 (App. Div. 2007) (finding that plaintiff, who was listed as a partner in Martindale-Hubbell and on the firm's letterhead and tax return, and who received distributions of net profits at a fixed rate, was not an equity member of the firm and therefore not entitled to an accounting); *see also Bradkin v. Leverton*, 257 N.E.2d 643, 647 n.4 (N.Y. 1970) (Court of Appeals held that plaintiff, suing to obtain a percentage of profits defendants obtained from the business plaintiff procured for defendants, had no right to an accounting because "there was no fiduciary duty between the plaintiff and the defendant"); *Scott v. Rosenthal*, No. 97 Civ. 2143 (LLS), 2000 U.S. Dist. LEXIS 23608, at *7-10 (S.D.N.Y. Dec. 19, 2000) (finding that defendants were entitled to summary judgment dismissing plaintiff's accounting claim where it was undisputed that the plaintiff did not agree to share in any of the partnership's losses, was not liable for any of its debts, did not exercise any joint management or control, did not have access to its bank accounts or authority to sign checks on its behalf, and did not contribute any capital); *Gersten-Hillman Agency v. Heyman*, 892 N.Y.S.2d 209, 211-12 (App. Div. 2009) (finding that the sharing of commissions between defendants and plaintiff did not entitle plaintiff to an accounting and noting that "[t]he mere fact that the defendant[] collected the proceeds and the plaintiff may be unaware of the exact amount to which it is entitled does not make the defendant [a] fiduciar[y]").

Plaintiff states that she joined the Firm as "an at-will, non-equity employee/partner."

¶11.  Plaintiff purportedly was to receive a 20% commission for fees the Firm earned from clients she generated.  ¶16.  Beyond this claim, Plaintiff fails to allege or establish any of the traditional indicia of a partnership (*e.g.*, loss sharing, capital contribution, or control over the firm).  *See Scott*, 2000 U.S. Dist. LEXIS 23608, at *8-9.

Accordingly, Plaintiff's accounting claim fails.

## IX.  PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF NYLL § 193

Plaintiff's claim under NYLL § 193 for wrongful deduction of wages also fails because the claim is not within the ambit of the statute.[17]  As explained by one court in this District, "the New York Court of Appeals has clearly held that § 193 applies only to deductions from wages." *Ferrand v. Credit Lyonnais*, No. 02 Civ. 5191 (VM), 2003 U.S. Dist. LEXIS 17202, at *43 (S.D.N.Y. Sept. 30, 2003) (citing *Huddas v. Frito-Lay, Inc.*, 683 N.E.2d 322, 325 (N.Y. 1997) ("Section 193 was intended to place the risk of loss for such things as damaged or spoiled merchandise on the employer rather than the employee.")).  Consequently, § 193 "has nothing to do with failure to pay wages or severance benefits, governing instead the ***specific subject of making deductions from wages***." *Goldberg v. Jacquet*, No. 14 Civ. 1581 (PAC), 2015 U.S. Dist. LEXIS 117860, at *5-6 (S.D.N.Y. Sept. 3, 2015) (collecting cases); *see also Miles A. Kletter, D.M.D. & Andrew S. Levine, D.D.S., P.C. v. Fleming*, 820 N.Y.S.2d 348, 350 (App. Div. 2006) ("the calculation of the net amount [of compensation owed] does not reflect a deduction from wages within the meaning of Labor Law § 193").

Plaintiff's conclusory assertion that "Defendants' failure to pay plaintiff a portion of the fee earned in the Jefferies Litigation constituted an unlawful deduction from plaintiff's wages"—

---

[17]    New York Labor Law § 193, entitled "Deductions from Wages," provides the following:

(1) No employer shall make any ***deduction from the wages*** of an employee, except deductions which: (a) are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency . . . ; or (b) are expressly authorized in writing by the employee and are for the benefit of the employee[.]

even though Plaintiff was not even employed by the Firm at the time—is insufficient to state a claim under NYLL § 193. ¶45. Without pointing to "specific deductions from [her] compensation," Plaintiff's "attempt to portray the withholding of [her] wages as a deduction . . . would sanction a skewed interpretation of § 193." *Goldberg*, 2015 U.S. Dist. LEXIS 117860, at *6; *accord Gold v. Am. Med. Alert Corp.*, No. 14 Civ. 5485 (JFK), 2015 U.S. Dist. LEXIS 108122, at *5-6 (S.D.N.Y. Aug. 17, 2015) ("Section 193 requires something more: a specific instance of docking the employee's pay. Because Gold only pleads a total withholding, his second claim must be dismissed.").

Significantly, Plaintiff's interpretation of NYLL § 193 would transform it into a catch-all provision essentially nullifying NYLL § 191. NYLL § 191 mandates the frequency with which an employer must pay wages to an employee. This provision is violated when an employee's wages are improperly withheld. *See, e.g.*, *Colangelo v. Fresh Perspectives*, 948 F. Supp. 331, 332 (S.D.N.Y. 1996) (§ 191 applies to "certain wrongfully withheld wages"); *see also Cuervo v. Opera Solutions LLC*, 928 N.Y.S.2d 26, 28 (App. Div. 2011) (Moskowitz, J., concurring in part and dissenting in part) (NYLL § 191 "provides that an employer cannot withhold wages after the termination of employment."). NYLL § 191—not so coincidentally—expressly excludes from its protection persons like Plaintiff who are employed in a "professional capacity whose earnings are in excess of nine hundred dollars a week[.]" N.Y. Labor Law §§ 191, 190(7); ¶¶1, 12; *see also Kletter*, 820 N.Y.S.2d at 350 (professional earning in excess of $600[18] per week "does not fall within any of the categories of workers listed in section 191").

Additionally, the statutory definition of "wages" "exclud[es] certain forms of 'incentive

---

[18] Effective January 14, 2008, NYLL § 190(7) was amended to increase the weekly wage threshold from $600 per week to $900 per week. *See Busgith v. Hudson News Co.*, No. 0015087/2005, 2008 N.Y. Misc. LEXIS 8623, at *22 (Sup. Ct. Apr. 8, 2008) (noting the effective date of the amendment). *Kletter* was decided in 2006, before the increase became effective.

compensation' that are more in the nature of a profit-sharing arrangement and are both contingent and dependent, at least in part, on the financial success of the business enterprise." *Truelove v. Ne. Capital & Advisory, Inc.*, 738 N.E.2d 770, 771-72 (N.Y. 2006).  Thus, where money sought is "based at least in part on factors other than plaintiff's own performance[,]" the payment is not a "wage" under the Labor Law and is therefore not pursuable under § 193. *Barber v. Deutsche Bank Sec., Inc.*, 961 N.Y.S.2d 39, 41 (App. Div. 2013).

Plaintiff's purported interest in the Jefferies fees was predicated on the Firm itself earning fees. ¶12.  The fee was conditioned upon several factors outside of Plaintiff's performance, including the Fund's continued retention of the Firm, the Firm's success in the Jefferies Case, and the court's approval of the Firm's fees.  *See* ¶24.  When Plaintiff resigned from the Firm, the Firm had earned $0, and several major steps remained until the fees were ultimately earned by the Firm two years later.  ¶¶19, 21.  Because Plaintiff's entitlement to fees would depend "on the success of [the Firm] as a whole, New York Labor Law § 193 does not apply."  *Levion*, 503 F. App'x at 64.

Accordingly, Plaintiff's claim under NYLL § 193 fails.

## X.     PLAINTIFF IS NOT ENTITLED TO PUNITIVE OR LIQUIDATED DAMAGES

Should Plaintiff's claims survive dismissal, her demands for punitive damages and liquidated damages nonetheless fail.  It is settled law that "[p]unitive damages are available only in those limited circumstances where it is necessary to deter defendant and others like it from engaging in conduct that may be characterized as 'gross' and 'morally reprehensible' and of 'such wanton dishonesty as to imply a criminal indifference to civil obligations.'"  *N.Y.U. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 767 (N.Y. 1995).  Plaintiff has not alleged that "defendants acted in a morally reprehensible manner" and therefore her demand for punitives is unwarranted. *Schwartz v. Hotel Carlyle Owners Corp.*, 20 N.Y.S.3d 341, 343 (App. Div. 2015); *see also*

*N.Y.U.*, 662 N.E.2d at 767; ¶47.

Additionally, Plaintiff does not allege that her Commission Agreement contained a liquidated damages clause; thus, her demand for liquidated damages is likewise inappropriate. *Cf. Consolid. Rail Corp v. MASP Equip. Corp.*, 490 N.E.2d 514, 517 (N.Y. 1986) (liquidated damages provision not enforceable to the extent that amount is readily ascertainable).

## XI.    CONCLUSION

For the foregoing reasons, and because Plaintiff cannot cure these defects with another amendment, Defendants respectfully request that the Amended Complaint be dismissed with prejudice.  *DDR Constr. Servs.*, 770 F. Supp. 2d at 666.

Dated:   March 14, 2016                        Respectfully submitted,

By: */s/ Richard W. Gonnello*

**FARUQI & FARUQI, LLP**
Richard W. Gonnello
Megan M. Sullivan
Katherine M. Lenahan
685 Third Avenue, 26th Floor
New York, NY 10017
Ph: (212) 983-9330
Fx: (212) 938-9331
E-mail: rgonnello@faruqilaw.com
        msullivan@faruqilaw.com
        klenahan@faruqilaw.com

*Attorneys for Defendants*