UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EMILY KOMLOSSY,<br><br>       Plaintiff,<br><br>       v.<br><br>FARUQI & FARUQI and LLP, NADEEM FARUQI,<br><br>       Defendants. | 15 Civ. 9316(KPF)(SN) |

**PLAINTIFF'S MEMORANSUM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff Emily Komlossy respectfully submits this memorandum of law in opposition to defendants' motion to dismiss the claims asserted in the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 8.

## ARGUMENT

### 1.

### THE AMENDED COMPLAINT STATES A CLAIM FOR UNLAWFUL DEDUCTION OF WAGES IN VIOLATION OF NEW YORK LABOR LAW SECTION 193

A. <u>Legal Standards Applicable to Plaintiff's Section 193 Claim</u>

When deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) a court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and decide whether it is plausible that the plaintiff has a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

B. <u>The Client Generation Compensation Promised to Plaintiff Constituted "Wages" Within the Meaning of the New York Labor Law</u>

The New York Labor Law defines "wages" as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis." NYLL § 190(1). Plaintiff alleges that defendants agreed to pay her compensation consisting of, *inter alia,* "twenty percent of any fees earned by the Firm in connection with clients she generated." Amended Complaint ¶ 12.[1] The foregoing client

---

[1] Defendants' assertions that plaintiff's client-generation compensation was contingent upon her continued employment or was proportional to the amount of time, if any, she expended working on the generated client's matter, appear nowhere the Amended Complaint and are not cognizable on this motion. In any event, so strong is New York's policy against the forfeiture of earned wages expressed in Article 6 of its Labor Law that even in the event an employee agrees or acquiesces in such forfeiture such an agreement is null and void and will not enforced because it is against public policy. *Weiner v. Diebold Group, Inc.,* 173 A.D.2d 166 (1st Dep't.

generation compensation is indisputable embraced within the plain meaning of the term "wages" as defined in the New York Labor Law.

Defendants assertion that it is "more in the nature of a profit-sharing arrangement and is contingent and dependent, least in part, on the financial success of the business enterprise" is factually inaccurate and contrary to the Amended Complaint's allegations. The foregoing was in no way contingent on Faruqi and Faruqi's financial success and, indeed, would have been due and owing to plaintiff even in the event the Firm lost money during the period in question.

In *Ryan v. Kellogg Partners*, 19 N.Y.3d 1 (2012), the New York Court of Appeals, distinguished *Truelove v. Northeast Capital & Advisory*, 95 N.Y.2d 220 (2000), and the discretionary profit sharing bonus at issue in that case, from the non-discretionary bonus at issue in the case before it, which had vested before the plaintiff left the defendant's employ. The later, it held, constituted "wages" within the meaning of the New York Labor Law. Here, as in *Ryan*, the client generation portion of plaintiff's compensation was not based on any factor other than the labor and services plaintiff rendered to secure a client. *See also Econn v. Barclays Bank PLC*, 2010 WL 9008868 at * 4 (S.D.N.Y. June 10, 2010) (failure to pay yearly bonus consisting

---

1991) (earned wages, including post-employment commissions, are not subject to forfeiture notwithstanding defendant's policy conditioning payment on continued employment).

Nor, contrary to defendants' assertions, does plaintiff plead that defendants had any discretion to withhold otherwise earned client generation compensation. *Doolittle v. Nixon Peabody LLP*, 126 A.D.3d 1519 (4th Dep't. 2015) (employer's discretion with respect to incentive compensation must be "clearly state[d] and will not be implied when such language is absent").

In any event, whether unpaid incentive compensation is a "discretionary bonus or earned wages" is ordinarily a question of fact." *Id.* citing Mirchel v. RMJSec. Corp., 205 A.D.2d 388, 389 (1st Dept. 1984) *Cf. Ryan v. Kellogg Partners*, 79 A.D.3d 447 (1st Dept. 2010), *aff'd*, 19 N.Y.3d 1 (1912) (Jury entitled to find that plaintiff proved an oral agreement regarding non-discretionary bonus notwithstanding his subscription of employment application and receipt for employee handbook which stated that employment, *compensation* and benefits are subject to change and terminable at will).

3

of a percentage of the total profits generated by the Distress Debt Desk where the plaintiff worked states a claim under New York Labor Law §193 which withstands a Fed. R. Civ. P. motion to dismiss given plaintiff's allegation that the bonus was "based on the profits [he] generated.")

Defendants' argument that plaintiff's client generation fee "was conditioned upon several factors outside of plaintiff's performance, including the Fund's continued retention of the Firm, et cetera, and was therefore not "wages" is specious. Defts. Brief at 29. As discussed further below, once plaintiff's diligent efforts resulting in the retention of a client for the Firm her entitlement to client generation compensation – whatever, value, if any, such compensation was ultimately determined to have – vested and could not be revoked. Defendants' conjuring of hypothetical eventualities which could have reduced or altogether eliminated value of plaintiff's entitlement and vested rights doesn't change anything. Whatever value it was ultimately determined to have was precisely what plaintiff was entitled to.

In sum, defendants earned a handsome fee as a direct result of the labor and services plaintiff rendered to them and a portion of that fee was promised to her without any of the pre-conditions defendants improperly seek to engraft into the Amended Complaint.

**C.     Defendants' failure to Pay a Portion of the Client Generation
         Portion of Plaintiff's Compensation Constituted A Deduction
         From Her Wages in Violation of NYLL Section 193**

Section 193 provides, in relevant part, that "[n]o employer shall make a deduction from wages." The New York Court of appeals has defined "deduction" as "an act of taking away or subtraction." *Agnello v. Labor Ready, Inc.,* 7 N.Y.3d 579 (2006) (emphasis added). Defendants' argument that their withholding of portion of her compensation did not constitute a "deduction" is spurious. Such withholding was both an act of "taking away" *and* an act of

"subtraction" in that the compensation defendants agreed to pay plaintiff for the labor and services she rendered in order to secure clients was only a portion of her total compensation. The Amended Complaint, moreover, alleges that defendants did, in fact, pay plaintiff client generation compensation in connection with other clients she retained for the Firm. Amended Complaint ¶ 16. Accordingly, the deduction plaintiff complains of was a specific, discrete, granular instance of substracting from her wages which was in the nature of docking her wages - conduct which, it can be fairly inferred, was undertaken in retaliation for her having left defendants' employ. Defendants repeated references to her having left the Firm (in a "fit of pique" no less) and their baseless argument that this somehow divested her of the right to the client generation compensation she had earned, only serves to buttress this inference.

The Court of Appeals holding in *Ryan* governs here. There the defendant failed to pay the plaintiff *any* portion of a promised bonus in respect of work performed in an entire year (984). The Court of Appeals held that this failure gave rise to a claim under § 193 of the New York Labor Law, where, like here, the bonus at issue was only a portion of plaintiff's total compensation and a much less granular portion than that at issue in this case. *See also Hudacs v. Frito-Lay, Inc.*, 90 N.Y.2d 342, 347, 683 N.E.2d 322, 324 (1997) ("§ 193 . . . traces its roots to former Labor Law §§ 195–197 [which] collectively prohibited deductions from wages for the benefit of the employer *and were designed primarily to ensure full and prompt payment of wages to employees*.") (emphasis added).

To the extent that *Goldberg v. Jacquet*, 2015 WL 5172939 (S.D.N.Y. 2015), which is currently being appealed, and *Gold v. Am. Med. Alert Corp.,* 2015 WL 4887525 (S.D.N.Y. Aug. 17, 2015), and the authorities cited therein, attempt to distinguish *Ryan* on the facts and come to a different conclusion regarding section 193's applicability based on their

reading of its legislative history and the respective Court's own purported policy concerns regarding "windfalls," those cases were wrongly decided and are contrary to the statute's plain language and the unequivocal holding of New York State's highest Court which has the final say with respect to the New York Labor Law's interpretation.

In *Gold*, the Court acknowledges *Ryan's* "broad language" but ignored its holding that the defendant employer's withholding of the 1994 yearly bonus at issue in that case constituted a "deduction" prohibited by § 193.[2] The irony of the Court's decision in *Gold* is that while acknowledging that Article 6's purpose was to "strengthen" employees' rights to the payment of wages, it then ventures off into the policy realm and goes on to conclude that "a breach of contract action already sufficiently protects an employee's rights to his total earned wages and does not need further reinforcement." Needless to say, such a judicial policy pronouncement has the potential to completely vitiate a legislatures' judgment that employers may need additional incentive, beyond that afforded by the common law, in the form of liquidated damages provided by § 198, to induce them to refrain from withholding promised wages, particularly given their vastly superior bargaining power, economic standing and leverage. And in the light of any potential financial or practical inability to pursue litigation as well as their fear of bad references and other forms of retaliation.[3]

---

[3] In *Goldberg,* the Court likewise ignored the Court of Appeals' holding in *Ryan* and relied principally on *Gold* to conclude that section 193 requires a "specific instance of docking the employee's pay." Id. at *3 citing *Gold* at *2. Although the meaning of *Gold* and *Goldberg*'s reference to "docking" is unclear, to the extent it implies that section 193's coverage excludes employees paid on a basis other than by periodic paychecks or highly compensated executive, administrative or professional employees whose sole compensation might, for example, consist of a yearly "bonus," it is contrary to the plain language of Article 6 and its construction by the New York Court of Appeals as further discussed below.

6

Indeed, one of the primary purposes of the New York Labor Law was to address this power imbalance. *Chung v. New Silver Palace Restaurants, Inc.,* 272 F. Supp. 2d 314, 317 (S.D.N.Y. 2003) "The New York Labor law was enacted to protect employees, and to remedy the imbalance of power between employers and employees"); *Saunders v. Big Brothers,* 115 Misc.2d 845, 848, 454 N.Y.S.2d 787 Civ Ct. NYC Sept. 15, 1982) ("The New York Labor Law reflects 'a strong legislative policy aimed at redressing the power imbalance between employer and employee.'"); *P & L Group, Inc. v. Garfinkel,* 150 A.D.2d 663, 664, 541 N.Y.S.2d 535 (2d Dep't 1989) ("Labor Law §§ 197 and 198 reflect a strong legislative policy aimed at protecting an employee's right to wages earned.").

  **D.**  **Article 6 of the New York Labor law Applies to Executive, Administrative and Professional Employees**

In *Pachter v. Bernard Hodes Group, Inc.,* 10 N.Y.3d 609 (2008), the New York Court of Appeals held that "executives" are "employees" within the meaning of Article 6 in response to that very question which had been certified for it by the Second Circuit. The New York Court noted that Section 190(2)'s definition of an "employee" as "any person employed for hire by an employer in any employment" "plainly embraces executives." *Id.* at 614. It rejected the argument that the broad definition of employee in that section was modified by subdivisions (5), (6) and (7) of section 190 which excluded "executives" along with administrative and professional employees who make more than a threshold amount.

The state appellate courts in New York have uniformly heeded the Court of appeals holding in *Pachter.* In *Wachter v. Kim,* 82 A.D.3d 658 (1st Dept. 2011), for example, the First Department held that the plaintiff who was employed by the defendants as the Managing Director and General Counsel of a limited partnership stated a cause of action under section 193 where he alleged that the defendants failed to pay certain minimum

7

guaranteed cash compensation. *See also Arbeeny v. Kennedy Executive Search Inc.,* 71 A.D.3d 177, 185 (1st Dept. 2010) (Article 6 Labor Law claim regarding commissions allegedly due to highly compensated employee earned prior to his termination reinstated by appellate court as a result of court's finding that breach of contract claims was improperly dismissed).

Similarly in *Tuttle v. George McQuesten Co. Inc.,* 227 A.D.2d 754, 756, 642 N.Y.S.2d 356 (3rd Dept. 1996), the Court held that summary judgment was appropriately granted to a former manager asserting a § 193 claim where the "plaintiff had a vested right to these moneys at the time of his resignation." In so doing, the Court noted that "[u]pholding a forfeiture thereof would be violative of public policy." *citing, Weiner v Diebold Group,* 173 A.D.2d a166, 167 (1st Dept. 1991); and *Cohen v Lord, Day & Lord,* 75 N.Y.2d 95, 550 N.E.2d 410, 551 N.Y.S.2d 157 (1989).

Finally in *Carlson v. Katonah Capital, LLC*, 10 Misc.3d 1076(A) (Sup. Ct. N.Y. County 2006), the defendants former Chief Operating Officer, Managing Principal, Portfolio Manager and Senior Analyst brought an action under § 193 seeking over $3 million in unpaid incentive compensation after they left the firm. The court determined that their a claim was properly brought pursuant to § 193. *See also Tortorella v. Postworks New York LLC et al.,* No 112686/10 at p. 11-12 (Sup. Ct. July 19, 2011) (copy submitted herewith), (managerial employee who was denied a promised bonus for two years was exempt from coverage under § 191 but stated a claim under § 193 "which prohibits the withholding of wages and not simply a specific deduction"). *Cf. Hart v. Dresdner Kleinwort Wasserstein Sec., LLC,* 2006 WL 2356157 (S.D.N.Y. Aug. 9, 2006)(complaint in class action brought by female executives stated claim for relief under Article 6).

*Pachter* and its progeny foreclose defendants' argument that "Plaintiff's interpretation of NYLL § 193 nullifies § 191.[4] It is hardly surprisingly that the legislature chose not to apply section 191's frequency of payment provisions to executives, administrators and professionals given that they are often paid on other than a weekly or bi-weekly basis and the frequency of payment provisions would not be applicable to them given the myriad ways and varying intervals at which they are paid.

In *Doolittle,* the plaintiff, a former associate of the defendant law firm, sued upon an oral promise to pay her a client-generation fee which she alleged was due to her out of money paid to the firm *after* her departure. 205 A.D. at 1519. Her complaint asserted claims for, among other things, violation of the New York Labor Law, breach of contract, promissory estoppel and *quantum meruit*, all of which the lower court dismissed as a matter of law. On appeal, the Appellate Division, ruled that this was error and reinstated all of the foregoing claims determining that each raised questions of fact. 205 A.D. at 1522.

---

[4] Section 191 merely specifies how frequently certain categories of employees are to be paid, including "[c]lerical and other worker[s]. § 190(7) excludes executive, administrative and professional employees whose earnings are in excess of nine hundred dollars per week from the definition of "[c]lerical and other worker."

Defendants cite *Colangelo v. Fresh Perspectives*, 948 F. Supp. 331, 332 (S.D.N.Y. 1996), for the proposition that wage claims can be brought under § 191. However in that case the Court merely noted in dicta that sections 191 and 198 of the NYLL "apply to certain wrongfully withheld wages" but did not apply those section in the case before it.

The language defendants quote from *Cuervo v. Opera Solutions LLC,* 928 N.Y.S.2d 26, 28 (1st Dept. 2011), is lifted from the dissenting potion of Judge Moskowitz's opinion and is therefore not good authority for the proposition for which defendants cite it.

### E. The Individual Defendants Are "Employers" Within the Meaning of Article 6, Section 190, Such That They Are Jointly and Severally Liable for Defendants' Failure to Pay Wages

The individual defendants herein are "employers" within the meaning of Article 6 such that each of them are jointly and severally liable to plaintiff for defendants' violation of § 193. "Courts have interpreted the definition of 'employer' under the NYLL coextensively with the definition used by the FLSA." *Copantitla v. Fiskardo Estiatorio, Inc.,* 788 F.Supp.2d 253, 308 n. 21 (S.D.N.Y.2011); *see Spicer v. Pier Sixty LLC,* 269 F.R.D. 321, 335 n. 13 (S.D.N.Y.2010); *Jiao v. Shi Ya Chen,* No. 03 Civ. 165(DF), 2007 WL 4944767, at *9 n. 12 (S.D.N.Y. Mar. 30, 2007)." *Fermin v. Las Delicias Peruanas Rest., Inc.,* 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015).

Court in the Second Circuit apply the so-called "economic reality" test to determine and individual defendants' status as an FLSA employer. The relevant factors include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999); Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015).[5]

Paragraph eight of the Amended Complaint alleges that the Faruqis "at all relevant times acted, "directly or indirectly in the interest" of themselves and Faruqi & Faruqi,

---

[5] Cases subsequent to *Herman* have further refined the economic reality test in various circumstances. See, e.g., *Zheng v. Liberty Apparel Co. Inc.,* 355 F.3d 61, 71 (2d Cir. 2003) (joint employer). A "substantially similar" standard has also developed under New York Law principally in cases where it must be determined whether the plaintiff was an employee or independent contractor.

LLP in relation to all of defendants' employees and at all relevant times possessed and exercised the authority to hire and fire employees, to supervise, direct and control their work, and to prescribe the terms and conditions of their employment, including their work hours and compensation. They are accordingly "employers" within the meaning of the NYLL.

II.

**THE STATUTE OF FRAUDS DOES NOT BAR
EMFORCEMENT OF PLAITNIFFS' BREACH OF CONTRACT CLAIM**

As defendants concede, at page nine of their brief, "[a]greements to pay commissions to an at-will employee "generally are enforceable while the [plaintiff] is still employed by the defendants, since employment is generally terminable at will." *Quoting Niyazov 156476/2013, 2014 N.Y. Misc. LEXIS 1073 at * 1 .n. 1.* In their rush to apply the Statute of Frauds to plaintiffs claims, however, defendants grossly misconstrue the allegations of the Amended Complaint and improperly draw all inferences arising from it *their* favor. Plaintiff alleges that the client-generation compensation at issue here was "*a term of her employment at the Firm,*" not a free-standing arrangement that extended indefintely. Amended Complaint § 12. Plaintiff does not contend that she is entitled to any fee from the defendants in connection with clients she generates for it *after* she left its employ. Rather she contends only that she is entitled to a fee she *earned while in defendants' employ* which remained unpaid when she left. The client generation compensation promised to plaintiff "survived" her departure from the Firm only to the extent that it remained unpaid at the time of her departure. Accordingly, none of the authorities cited by the defendants on pages 10 through 14 of their brief are applicable here.

As the Court correctly pointed out at the initial conference in this case, plaintiff's client generation fee "vested, if at all, while Ms. Komlossy was still at the firm." Transcript of

Pre-Motion Conference dated January 21, 2016 at 5.[6]  This conclusion is in accord with relevant caselaw.  In *Rifkind v. Web IV Music, Inc.,* 67 Misc. 2d 26, 34, 323 N.Y.S.2d 326, 335 (Sup. Ct. 1971), the Court quoted the New York Court of Appeals' decision in *Martocci v. Greater New York Brewery,* 301 N.Y. 57, 92 N.E.2d 887 (1950) to disposed of an argument virtually identical to that defendants proffer here:

> "If the terms of the contract here had included an event which might end the contractual relationship of the parties within a year, defendants' possible liability beyond that time would not bring the contract within the statute."

> *Id*. at 34.  The Court in *Rifkind* then concluded:

> Of course, there remains the responsibility on the defendant's part with respect to the determination of the amount of override due the plaintiff on net sales made while the plaintiff was in defendant's employ, and that obligation may (and in this case does) extend beyond the time that the plaintiff's employment ceased. However, that aspect concerns a duty which came into fruition prior to the passing of a year and relates to past performance only. The fact that the amount of the payment due may not be ascertained until some future time creates no new obligations. Such future satisfaction of a pre-existing liability involves the matter of computation only and is merely mechanical in its application (*Raes v. So-Lite Furniture Corp*., 4 A D 2d 851, *supra*).

---

[6] Because plaintiff's entitlement to a fee vested while she was employed by the Firm, the ethical rules cited by the defendants do not apply.  While the parties may have agreed to the terms of plaintiff's employment earlier, the agreement did not become operative until plaintiff starting working at the firm.  Virtually all of the cases cited by the defendants involved outside lawyers who performed contract work for a firm with which they did not have an employment or partnership relationship when their alleged right to the money they sought was earned.  Those cases are accordingly not relevant here.

In any event, if defendants truly believed that plaintiff committed an ethical breach upon entering into the contract with them before she commenced employment with the Firm and thereafter, as they contend at page 7 of their brief, they should have immediately reported both her *and themselves* to the appropriate disciplinary authorities as the ethical rules require.  The fact that they have not done so, and that such failure continues to this date, indicates that they are playing fast and loose with the Court by pursuing this argument and that, in any event, equity demands that they should be estopped from asserting their own ethical breaches as a defense to plaintiff's claims.

Id. Because the amount due to plaintiff was not known at the time of the Court's decision, it directed to defendants to furnish plaintiff with an accounting. Id. at 35-36.

Defendants also misconstrue the Amended Complaints allegations with respect to the Firm's retention by the Fund. Plaintiff alleges that: "following [her] presentation, the Fund voted to retain Faruqi to proceed with litigation against Jeffries and its Board of Directors, and to represent its interests in a class action which was filed in the Court of Chancery of the State of Delaware ('Delaware court') (the 'Jeffries Litigation')." Amended Complaint ¶ 17. Thus the Fund's retention of Faruqi did not contemplate an on-going relationship or a situation, such as that in the cases defendants cite, where a client from time to time requests additional services in connection with unrelated matters or places orders for new merchandise or the like on an ongoing basis. However unlikely the prospect may have been, it is nonetheless "probable" that the Jeffries Litigation, like plaintiff's employment at the Firm, could have concluded within a year.

In sum, unlike in *Levine v. Zadro Prods.,* No. 02 Civ. 2838 (GBD), 2003 U.S. Dist. LEXIS 9637, at *4 (S.D.N.Y., June 9, 2003), and the other cases cited by the defendants, the Fund's retention of the Firm did not contemplate future orders and the Amended Complaint does not expressly allege, and cannot be reasonably construed to imply ( particularly when its allegations are construed in the light most favorable to plaintiff), that plaintiff would have a right to any portion of the fees the Firm earned should the Fund choose to retain it in future matters unrelated to the Jeffries Litigation.[7]

---

[7] Hess v. Kanoski & Associates, 2014 WL 1282572 (C.D. Ill. Mar. 28, 2014), aff'd sub nom. Hess v. Bresney, 784 F.3d 1154 (7th Cir. 2015) cited by defendants is distinguishable. That case turned solely on the interpretation of a written contract and did not involve the Statute of Frauds. The written agreement at issue there provided that the plaintiff was entitled to a bonus "based on fees "generated" and "received" and further provided "in no

13

A.     **Plaintiff was in Privity with the Faruqis.**

Although one could make a convincing argument that the Amended Complaint's allegations give rise to an inference strong enough to survive a motion to dismiss that the brother and sister Faruqi team, as the sole equity partners in Faruqi and Faruqi are alter egos of the Firm and discovery will undoubtedly prove that to be the case ( *See, e.g.,* Amended Complaint ¶¶ 6-8, 11-12, 14, 22-23) it is not necessary for plaintiff to establish the Faruqi's alter-ego status in order to prevail on her breach of contract claim against them.  It is well settled that "nonsignatories may be held liable for breach of contract, without being "alter egos," if their actions show that they are in privity of contract [such as where they, among other things] attended meetings ... and participate[] in the negotiations and drafting of the contract."  MBIA Ins. Corp. v. Royal Bank of Canada, 706 F. Supp. 2d 380, 397 (S.D.N.Y. 2009) *citing Impulse Mktg. Group v. Nat'l Small Bus. Alliance, Inc.,* No. 05–CV–7776, 2007 WL 1701813, at *5–6 (S.D.N.Y. June 12, 2007) (applying New York law); *ESI, Inc. v. Coastal Corp.,* 61 F.Supp.2d 35, 73–74 (S.D.N.Y.1999)(same).

Here, the Amended Complaint alleges that: "[d]uring the course of Plaintiff's legal career, she met and became friends with Nadeem Faruqi, who, together with his sister Lubna Faruqi, founded Faruqi in or about 1995.  During this over 20 year friendship, Nadeem Faruqi periodically asked Plaintiff to join the Firm."  Amended Complaint ¶ 11.

" . . . *the parties* discussed and agreed upon the terms of Plaintiff's employment at the Firm and shook hands over the arrangement."

". . . *the parties* agreed that Plaintiff would be paid . . . "

" . . . *the parties* agreed to four weeks paid vacation, insurance coverage and various other provisions of employment. "

*Id*. at ¶ 12 (emphasis added).

---

uncertain terms that, where the client remains with [defendant plaintiff] is entitled to nothing for his work on the client's case beyond the salary and bonus Hess received as a K & A employee. *Id*. at * 4-5.

Significantly, the Amended Complaint further alleges that: "[g]iven [*the parties*] more than twenty year history of friendship and trust, plaintiff did not believe it was necessary to embody the terms of their agreement in a formal writing."  The foregoing allegation unequivocally demonstrates that plaintiff viewed the agreement as one between herself and the Faruqi's in addition to the Firm.  Plaintiff did not have a twenty year history of friendship with the later.  This allegation alone gives rise to a compelling inference that plaintiff and the Faruqi's believed they were entering into an agreement with each other.

Equally significant is the Amended Complaint's allegation that "Nadeem Faruqi made it clear **he** would not pay for expenses relating to Plaintiff's work-related trips from Florida to New York as had Labaton." *Id*. at 14 (emphasis added). [8]

In sum, nowhere does the Amended Complaint allege that the Faruqi's negotiated and agreed to their contract in their capacity as equity partners. the foregoing allegations, and the reasonable inferences that arise from them, indicate that the parties were in privity *and* that the Faruqi's assumed the obligations of the contract and evidenced an intent to be bound by it.  They importuned plaintiff to join them, negotiated the terms of her engagment and, in the case of Nadeem Faruqi, made clear that "*he*" would not pay for certain items in connection with their contract.  Finally, plaintiff was willing to forgo a written agreement because of her trust in the individual defendants based on twenty years of friendship.

---

[8] Plaintiff concedes that her tortious interference claim is only viable in the event it is ultimately determined in this action that the Faruqi's were not parties to the Contract.  Plaintiff is, of course, permitted to plead in the alternative.

## III.

### PLAINTIFF'S CLAIMS AGAINST THE FARUQI'S ARE
### NOT BARRED BY NEW YORK'S LIMITED PARTNERSHIP LAW.

As the Court correctly pointed out at the pre-motion conference New York's partnership law does not apply because plaintiff's claims are asserted against the defendants directly. Plaintiff does not seek to hold them vicariously liable for the conduct of others. Transcript of Pre-Motion Conference dated January 21, 2016 at 5. Section 26(b) of the New York Partnership law addresses only vicarious liability and does shield the Faruqis from liability for their own breaches or failure to pay wages. *Fischer v. OBG Cameron Banfill LLP,* 2010 WL 3733882 at *2 (S.D.N.Y. Sept. 24, 2010) (limited liability partners who participate in alleged misconduct are not shielded by section 26(b)). Even one of the principal cases on which defendants rely, holds that Partnership Law § 26(b) immunizes only those individuals "who did not commit the underlying wrongful act." *Salazar v. Sacco & Fillas, LLP,* 114 A.D.3d 745, 747 (2nd Dept. 2014). The Faruqi's are liable to plaintiff for their violation of section 193 of the New York Labor Law by virtue of their status as "employer[s]" not as equity partners and no case has ever held that the partnership law shields "employer[s]" from liability for "wages."

## IV.

### THE AMENDED COMPLAINT STATES A CLAIM FOR
### TORTIOUS INTERFERENCE AGAINST THE INDIVIDUAL DEFENDANTS

In *Albert v. Loksen*, 239 F.3d 256, 275 (2d Cir. 2001), the Second Circuit summarized the variety of situations in which an individual ostensibly acting as an agent on behalf of a principal can nonetheless be liable for intentional interference with contractual relations, including situations in which the plaintiff and the defendants had a relationship of trust and confidence. The Circuit cited *Waldron v. Lutheran Social Services of Upper New York,*

*Inc.*, 207 A.D.2d 1027, 1028, 617 N.Y.S.2d 665, 665 (4th Dep't 1994) and *Miller v. Richman*, 184 A.D.2d 191, 194, 592 N.Y.S.2d 201, 203 (4th Dep't 1992) for the proposition that a claim for tortious interference against in such instance is appropriate where the later owe[s] a duty to plaintiff based on such a relationship. The Second Circuit further noted that this rule would also apply where a the defendant act purely from "malice or self-interest" or commits "acts directed at another for personal pecuniary gain." *Quoting BIB Const. Co. v. City of Poughkeepsie,* 204 A.D.2d 947, 948, 612 N.Y.S.2d 283, 285 (3d Dep't 1994).

Given the trust and confidence plaintiff reposed in the individual defendants arising from their close 20 year relationship, the above cases cited by the Second Circuit are applicable here. In addition the Amended Complaint alleges that "Nadeem Faruqi advised Plaintiff that *he* [not the Firm] was repudiating their agreement. Id. at ¶ 22. To rub salt into the wounds, he further advised plaintiff that other former employees had received client generation fees *after* they left the Firm. *Id*. at 23. Finally, as one of two equity partners in a small law firm, it goes without saying that defendant Nadeem Faruqi was uniquely situated to realize substantial "personal pecuniary gain" as a result of the repudiation of plaintiff's contract. *Const. Co.*, 204 A.D.2d at 948. Accordingly plaintiff had properly alleged a claim for intentional interference against him in the event it is ultimately determined that he was not a party to the contract.[9]

---

[9] Defendant's argument that the contract had ended when the interference occurred is specious. Defts Br. At 17.While it is true that plaintiff was advised that her contract was being repudiated after she left the Firm and that the agreement had "ended" insofar as plaintiff had no further entitlement to generation fees in respect of clients she secured after her departure, the defendants obligation under the contract to pay generation fees which had accrued and vested while plaintiff was at the Firm survived her departure. In the later sense, the contract had not "ended" and Nadeem Faruqi tortiously interfered with its ultimate consummation.

17

# V.

## THE COMPLAINT STATES A CLAIM FOR UNJUST ENRICHMENT

"When there is a bona fide dispute as to the existence of a contract, a party may proceed upon a theory of unjust enrichment, and an unjust enrichment claim may be alleged alongside a breach of contract claim." *Labajo v. Best Buy Stores, L.P.,* 478 F. Supp. 2d 523, 531 (S.D.N.Y. 2007) *citing In re Vivendi Universal, S.A.,* No. 02 Civ. 5571(RJH), 03 Civ. 2175(RJH), 2004 WL 876050, at *12 (S.D.N.Y. April 22, 2004). This is permissible, the court held "under the liberal alternative pleading policy under Rule 8(e)(2) of the Federal Rules." *Id. citing MCI Worldcom Commc'ns, Inc. v. LD Wholesale Inc.,* No. 01 Civ. 6310(RO), 2002 WL 1483886, at *1 (S.D.N.Y. July 9, 2002).

Dismissal of plaintiff's unjust enrichment claim at this junction would be premature as it remains to be seen whether plaintiff will successfully establish her breach of contract claim at trial. The breach contract and unjust enrichment claims are not identical. Each has different standards and legal requirements and plaintiff has not separately enumerated the damages she seeks in respect of each of these claims.

Defendants argument that plaintiff's receipt of a salary bars her unjust enrichment claim is premised on factual assumptions, such as the value of plaintiff's services, which cannot be resolved on this motion and are factual question which will have to await resolution at trial. *Karmilowicz v. Hartford Financial Servicesc Group*, 2011 WL 2936013 at *12 (S.D.N.Y July 14, 2011) is distinguishable because that case involved *discretionary* incentive compensation. Here, the Complaint alleges, that defendants themselves agreed that plaintiff was worth more to them than the salary they were paying her, in the event she generated clients, such that they agreed to pay her additional compensation if she did so.

Finally, it is possible that plaintiff will ultimately be unable to establish her breach of contract claim at trial for reasons other than the statute of frauds. In which event, her unjust enrichment claim may continue to be viable. Accordingly, dismissing plaintiff's unjust enrichment claim now would be pre-mature.

## VI.

### PLAINTIFF HAS STATED A CLAIM FOR ESTOPPEL

For the same reasons discussed in the foregoing section regarding plaintiff's unjust enrichment claim, it is pre-mature to dismiss her estoppel claim. As discussed above, plaPlaintiff's allegations of reliance here are concrete, specific and undisputed by the defendants. The Amended Complaint details the substantial efforts she undertook to secure the Fund as a client for the Firm in the Jeffries Litigation in reliance on defendants promises. While her employment may have been terminable at will, once she actually expended efforts to secure and secured the Fund as a client in reliance on defendants promises of a generation fee, equity will not permit the defendants to them to repudiate those promises.

## VII.

### PLAINTIFF ASSERTS A VIABLE CLAIM FOR AN ACCOUNTING

The fiduciary relationship which is a predicate to plaintiff's claim for an accounting is not dependent upon her status as an equity or non-equity partner. Whether such a relationship exists "is necessarily fact-specific to the particular case" and arises from the trust, confidence and reliance plaintiff placed in her employer. *Wiener v. Lazard Freres & Co.,* 241 A.D.2d 114, 672 N.Y.S.2d 8, 14 (1998). See Amended Complaint ¶¶ 11-12. Such a factually intense question cannot be resolved on a motion to dismiss. Plaintiff, moreover, unlike the plaintiff in *Masur v. Greenberg, 488 N.Y.S.2d 397 (1st Dep't 1985)* seeks an accounting only

19

with respect to one particular matter – the Jeffries Litigation - not of the firm's finances as a whole. *Rifkind,* 67 Misc. 2d at 35-35.

## VIII.

## PLAINTIFF IS ENTITLED TO LIQUIDATED AND PUNITIVE DAMAGES

Defendants do not a seek any relief with respect to plaintiff's prayer for relief which includes liquidated and punitive damages so it is unclear why they raise these issues now. The foregoing are elements of damages, not independent claims subject to dismissal on a motion under Fed. R. Civ. P. 12(b)(6) or 8. In any event, Labor Law § 198 provides for liquidated damages in the event that the defendants fail to prove that they had a good faith basis to believe its actions were in compliance with the law. Punitive damages, moreover, are available in connection with several of the claims plaintiff has asserted it cannot be held as a matter of law that defendants' alleged conduct was not morally reprehensible.

## **Conclusion**

For all of the following reasons, plaintiff respectfully submits that defendants motion to dismiss should be denied in its entirety.

Dated: Mineola, New York
April 15, 2016

Respectfully submitted,

By: /s/ Karl J. Stoecker

**LAW OFFICES OF KARL J. STOECKER**
22 Jericho Turnpike, Suite 100 West
Mineola, New York 1150
(212) 818-0080
kjs@kjslawfirm.com