UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X
                                  :

EMILY KOMLOSSY,                   :
                                  :

                    Plaintiff,     :       15 Civ. 9316 (KPF)
                                  :

             v.                :     OPINION AND ORDER
                                :

FARUQI & FARUQI, LLP, NADEEM FARUQI, :
and LUBNA M. FARUQI,        :
                                :

                Defendants. :
                                :
-------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: February 22, 2017

KATHERINE POLK FAILLA, District Judge:

      In 2015, Plaintiff Emily Komlossy brought this action against her former employer, Faruqi & Faruqi, LLP, and its equity partners, Nadeem Faruqi and Lubna M. Faruqi, in an effort to recover a client fee commission for which she claims entitlement under an oral agreement made, if at all, in February 2007. In the First Amended Complaint (the "FAC"), Plaintiff raises contractual, quasi-contractual, and labor law claims, among others. As discussed herein, the claims all fail. Most notably, the oral agreement on which many of the claims are predicated is void under the New York Statute of Frauds, and the unpaid commission itself is not cognizable as a wage deduction under the New York Labor Law. Accordingly, Defendants' motion to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6) is granted in its entirety.

# BACKGROUND[1]

## A.      Factual Background

### 1.      The Parties and the Oral Agreement

Plaintiff, a Florida resident, is a former non-equity partner at Defendant Faruqi & Faruqi, LLP (the "Firm"), a law firm organized as a limited liability partnership and based in New York City.  (FAC ¶¶ 1, 4-5).  Defendants Nadeem Faruqi and Lubna Faruqi, New York residents, are the Firm's sole equity partners (the "Individual Defendants," and collectively with the Firm, the "Defendants").  (*Id.* at ¶¶ 6-7).

Plaintiff enjoyed a two-decades-long friendship with the Individual Defendants and, over a February 2007 dinner in New York City, she accepted Defendant Nadeem Faruqi's offer to join the Firm as an at-will, non-equity partner.  (FAC ¶ 11).  During the dinner, the parties discussed and orally agreed to the terms of Plaintiff's employment with the Firm (the "Agreement"). As described in the FAC,

> [a]mong other things, the parties agreed that Plaintiff would be paid: (i) an annualized salary of $250,000; (ii) periodic bonuses at the discretion of the Firm; and (iii) twenty (20) percent of any fees earned by the Firm in connection with clients she generated.  In addition, the parties agreed to four weeks paid vacation, insurance coverage and various other provisions of employment.

---

[1]      This Opinion draws on facts from the First Amended Complaint ("FAC," Dkt. #14), the well-pled facts of which are taken as true for purposes of this motion.  *See Morrison* v. *Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 679 (2009).  For convenience, Defendants' moving brief is referred to as "Def. Br." (Dkt. #18); Plaintiff's brief in opposition as "Pl. Opp." (Dkt. #20); and Defendants' reply as "Def. Reply" (Dkt. #21).

* * *

> The parties' agreement did not condition [P]laintiff's entitlement to a generation fee on her continued employment at the Firm or on the amount of work she performed, if any, in connection with the client's matter.

(*Id.* at ¶¶ 12, 23).  Given her "history of friendship and trust" with the Individual Defendants, Plaintiff "did not believe it was necessary to embody the terms of their agreement in a formal writing."  (*Id.*).  Plaintiff believes this 20% client generation commission was "the Firm's standard practice" with other non-equity partners.  (*Id.* at ¶ 13).

In May 2007, Plaintiff purchased an apartment in New York City and moved there for the new job; a few months later, in August 2007, she began working at the Firm.  (FAC ¶ 14).  During her tenure, Plaintiff developed individual and institutional clients for the Firm.  (*Id.* at ¶ 15).  Among these was a Michigan county pension fund (the "Fund"), whose Board of Trustees Plaintiff knew from her time at a prior law firm.  (*Id.* at ¶¶ 9-10, 15).  Plaintiff became the Firm partner in charge of stock monitoring for the institutional clients she procured.  (*Id.* at ¶ 15).  "In keeping with Plaintiff's compensation agreement, the Firm paid her [20%] of the fees it earned in connection with the representation of several clients she procured for the Firm," including from litigations involving Cox Radio, Inc., Bronco Drilling Co. Inc., and BEA Systems.  (*Id.* at ¶ 16).

## 2.    The Jefferies Litigation and Plaintiff's Resignation

In about December 2012, "a merger was announced involving the acquisition of Jefferies Group, Inc. ('Jefferies') by Leucadia Corp, its controlling

shareholder." (FAC ¶ 17). The Fund was a significant stockholder in Jefferies, so Plaintiff flew to Michigan on December 9, 2012, to address the Fund's Board about the merger's ramifications and to discuss potential litigation to protect the Fund's interests. (*Id.*). Following Plaintiff's presentation, the Fund voted to retain the Firm to proceed with litigation against Jefferies and its Board of Directors, and to represent the Fund's interests in a class action filed in the Delaware Court of Chancery (the "Jefferies Litigation"). (*Id.*). The Firm thereafter reached an agreement with other plaintiffs' counsel in the Jefferies Litigation pursuant to which the Firm "would perform approximately 19% of the services in the case, and if successful, would be entitled to 19% of any fee awarded" by the Delaware court. (*Id.* at ¶ 18).

Plaintiff resigned from the Firm on February 11, 2013, nearly six years after she began. (FAC ¶ 19). She was subsequently identified as a witness in a different lawsuit against the Firm, and for related reasons "sought to avoid contact with the Firm except through her counsel." (*Id.*). Plaintiff later heard from other former Firm employees that the Firm "continued to pay its former lawyer/employees [20%] of the fees earned by the Firm in respect of clients procured by them while they were employed by the Firm, in keeping with its standard practice." (*Id.* at ¶ 20).

In "early 2015," Plaintiff learned that the Jefferies Litigation had settled. (FAC ¶ 21). On March 23 and 24, 2015, Defendant Nadeem Faruqi "advised Plaintiff that he was repudiating [the Agreement] and would not pay her any portion of the fees the Firm earned in the Jefferies Litigation." (*Id.* at ¶ 22). He

4

acknowledged that Plaintiff "would have received a percentage of the fee earned by the Firm as a result of her procurement of the Fund as a client in the Jefferies Litigation had she stayed at the [F]irm," but he contended that she "was not entitled to anything because she left the Firm prior to its receipt of the Jefferies fees." (*Id.*).

The Delaware court approved the Jefferies Litigation settlement on March 25, 2015, but reserved decision on a contested fee application wherein plaintiffs' counsel, including the Firm, collectively sought $27.5 million, plus expenses. (FAC ¶ 21). On June 5, 2015, the Delaware court awarded $21.5 million to plaintiffs' counsel, approximately $4 million of which was allocated to the Firm. (*Id.* at ¶ 24).

Plaintiff brought this action on November 15, 2015, seeking to recover 20% of the Firm's Jefferies Litigation fee (the "Jefferies Fee Commission") and asserting claims against the Firm and the Individual Defendants for (i) breach of contract; (ii) estoppel; (iii) unjust enrichment; (iv) conversion; (v) an accounting; and (vi) illegal wage deductions in violation of New York Labor Law (the "NYLL") § 193, N.Y. Lab. Law § 193. (FAC ¶¶ 26-39, 42-47). Plaintiff also asserts a claim against only the Individual Defendants for (vii) tortious interference with contractual relations. (*Id.* at ¶¶ 40-41).

## B.   Procedural Background

Plaintiff filed the Complaint on November 25, 2015 (Dkt. #1), and following a January 21, 2016 Pre-Motion Conference (Dkt. #15), filed the FAC on February 11, 2016 (Dkt. #14). Defendants filed their motion to dismiss, and

supporting brief and declaration on March 14, 2016 (Dkt. #17-19); Plaintiff

filed her opposition brief on April 16, 2016 (Dkt. #20);[2] and Defendants filed

their reply brief on April 29, 2016 (Dkt. #21).  Defendants also filed a notice of

supplemental authority on July 1, 2016.  (Dkt. #23).

## DISCUSSION[3]

### A.    Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil

Procedure 12(b)(6), a court should "draw all reasonable inferences in [the

plaintiff's] favor, assume all well-pleaded factual allegations to be true, and

determine whether they plausibly give rise to an entitlement to relief."  *Faber* v.

*Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks

omitted) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir.

2009).  Thus, "[t]o survive a motion to dismiss, a complaint must contain

---

[2]    Plaintiff's opposition brief is noncompliant with Rule 4.B of the Court's Individual Rules of Practice in Civil Cases, which requires that briefs of "10 pages or more … contain a table of contents and a table of authorities." Plaintiff's 20-page brief lacks both. While the Court readily perceived the defect, Defendants began their reply brief with a nod to Plaintiff's "procedural shenanigans." (Def. Reply 1). Given Defendants' own penchant for lengthy, single-spaced footnotes in truncated typeface to bring their briefs within the Court's page limitations, the adage about glass houses seems appropriate.

[3]    Both sides cite to New York law throughout their briefing. Where "[t]he parties' briefs assume that New York law controls … such 'implied consent … is sufficient to establish choice of law.'" *Krumme* v. *WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (quoting *Tehran–Berkeley Civil & Envtl. Eng'rs* v. *Tippetts-Abbett-McCarthy-Stratton*, 888 F.2d 239, 242 (2d Cir. 1989)); *accord AIG Europe (Netherlands), N.V.* v. *UPS Supply Chain Sols., Inc.*, 765 F. Supp. 2d 472, 479 (S.D.N.Y. 2011). Accordingly, the Court applies New York law here.

Moreover, except where noted, the Court's analysis is limited to the arguments raised by the parties. *See Probulk Carriers Ltd.* v. *Peraco Chartering USA LLC*, No. 11 Civ. 5686 (RJS), 2012 WL 3095319, at *11 n.6 (S.D.N.Y. July 20, 2012) ("[B]ecause [the party] does not raise this argument in its briefing, the Court will not address it *sua sponte*.").

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).

"While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [a plaintiff's] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (per curiam) (quoting *Twombly*, 550 U.S. at 570). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco* v. *MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d

Cir. 1995) (per curiam)); *see generally Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 558-59 (2d Cir. 2016) (discussing documents that may properly be considered in resolving a motion to dismiss).

## B.   Plaintiff Has Not Stated a Viable Claim for Relief

### 1.   Breach of Contract

The FAC's first cause of action alleges that "Defendants breached their agreement to pay Plaintiff [20%] of the fees earned in connection with clients Plaintiff generated, including the fees earned by the Firm in the Jeffries Litigation." (FAC ¶ 27).  The Court finds the Agreement unenforceable under the Statute of Frauds and, accordingly, dismisses this claim.

#### a.   Applicable Law

A viable claim for breach of contract requires an enforceable agreement. *See Roberts* v. *Karimi*, 251 F.3d 404, 407 (2d Cir. 2001); *Mercator Corp.* v. *Windhorst*, 159 F. Supp. 3d 463, 469 (S.D.N.Y. 2016).  The New York Statute of Frauds renders void any oral agreement that "[b]y its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime."  N.Y. Gen. Obligg. Law § 5-701(a)(1).  In other words, if an agreement is incapable of full performance within a year, it must be in writing to be enforceable.  *See Guilbert* v. *Gardner*, 480 F.3d 140, 151 (2d Cir. 2007).

Two points bear emphasis.  First, the oral agreement need only be *capable* of performance within a year, "however unexpected, unlikely, or even improbable" such performance may be.  *Cron* v. *Hargro Fabrics, Inc.*, 91 N.Y.2d

362, 366 (1998).  Second, *full* performance must be possible; that is, complete

performance by all parties to the agreement, "not just of one party thereto."  *Id.*

at 368.  Thus, contracts, "which by their very terms have absolutely no

possibility in fact and law of full performance within one year," fall within the

Statute of Frauds and must be in writing.  *D & N Boening, Inc.* v. *Kirsch*

*Beverages, Inc.*, 63 N.Y.2d 449, 454 (1984) (citing 2 Arthur L. Corbin, *Contracts*

§ 444 (1950); 3 Samuel Williston, *Contracts* § 495 (3d ed. 1960)).

At-will employment contracts are generally considered outside the scope

of the Statute of Frauds because, by their nature, such contracts can be

completed within a year if either party exercises its termination option.  *See*

*Guilbert*, 480 F.3d at 151.  This remains true even if the at-will contract

includes a trailing compensation structure that requires salary or bonus

calculations after the passage of a single year.  *See id.*  Put differently, if "the

employment relationship is terminable within a year and the measure of

compensation has become fixed and earned during the same period," then "the

sole obligation to calculate such compensation will not bring the contract

within the one-year proscription of the Statute of Frauds."  *Cron*, 91 N.Y.2d at

370; *accord Guilbert*, 480 F.3d at 151-52.

### b.   Analysis

#### i.   The Terms of the Oral Agreement

The parties' dispute begins not over the *application* of the Statute of

Frauds to the Agreement, but over the terms of the Agreement itself.

Defendants assert that the Agreement, as pled, contains "no temporal or other

9

limitations or boundaries," such that "Defendants' potential liability extends indefinitely for 20% of 'any fees' the Firm earns 'in connection with clients she generated.'" (Def. Br. 10).

Plaintiff labels this a gross misconstruction of her pleadings. (Pl. Opp. 11). The Agreement, she maintains, does not entitle her "to any fee from [the Firm] in connection with clients she generates for it *after* she left its employ," but only "to a fee *she earned while in [the Firm's] employ* which remained unpaid when she left." (*Id.* (emphases in original)). She also insists that "the Fund's retention of the Firm did not contemplate future orders and the [FAC] does not expressly allege, and cannot be reasonably construed to imply … that [P]laintiff would have a right to any portion of the fees the Firm earned should the Fund choose to retain it in future matters unrelated to the Jefferies Litigation." (*Id.* at 13). Defendants respond that these post-hoc limitations are merely Plaintiff's efforts to rewrite the terms of the alleged Agreement in order to evade the Statute of Frauds defect identified in Defendants' moving brief. (Def. Reply 4).

As pled, the Agreement provides "that Plaintiff would be paid: (i) an annualized salary of $250,000; (ii) periodic bonuses at the discretion of the Firm; and (iii) twenty (20) percent of any fees earned by the Firm in connection with clients she generated." (FAC ¶ 12). The Court draws all reasonable inferences in Plaintiff's favor in construing the FAC's description of the Agreement. *See Faber*, 648 F.3d at 104.

The Court agrees with Plaintiff that the Agreement does not purport to entitle her "to any fee from [the Firm] in connection with clients she generates for it after she left its employ." (Pl. Opp. 11). Read in context, the 20% commission provision applies only in connection with clients that Plaintiff generated while she was employed at the Firm, not with any clients that she may have referred to the Firm after her departure.

The Court disagrees with Plaintiff, however, that the Agreement limits the 20% commission provision to fees earned in connection with only the Jefferies Litigation or other matters that began during her tenure at the Firm. The Agreement contains no limitation, express or implied, that Plaintiff's entitlement to 20% of "*any* fees earned by the Firm in connection with clients she generated" (FAC ¶ 12 (emphasis added)), is restricted to fees earned on particular matters or matters launched at particular times. Indeed, elsewhere in the FAC, Plaintiff indicates that the Jefferies Fee Commission is but a subset of the commissions to which she is entitled. (*See id.* at ¶ 27 ("Defendants breached their agreement to pay Plaintiff [20%] of the fees earned in connection with clients Plaintiff generated, *including* the fees earned by the Firm in the Jefferies Litigation." (emphasis added)).

The contrary interpretation and arguments offered in Plaintiff's opposition brief exhibit a misunderstanding of the Statute of Frauds inquiry. The operative question is whether the Agreement "by its terms" is capable of performance within a year. N.Y. Gen. Obli. Law § 5-701(a)(1). Plaintiff does not explain why it is material to the Statute of Frauds analysis that the Fund's

initial *retention* of the Firm contemplated only one representation, i.e., the Jefferies Litigation, or why it is material that the instant lawsuit seeks recovery of unpaid commissions only as to this one matter.[4]  These are specific facts related to a specific matter on behalf of a specific client, which in turn is one client among many subject to the Agreement.  (*See, e.g.,* FAC ¶¶ 15-16).  Again, the Court has been offered no good reason why such facts should be permitted to retroactively cabin the terms of the Agreement, which was made more than five years before the Firm was retained for the Jefferies Litigation (*see id.* at ¶¶ 11-12, 17), and more than eight years before the instant lawsuit was filed (*see* Dkt. #1).

In sum, the Court concludes that the Agreement as pled entitles Plaintiff, *inter alia*, to 20% of fees earned by the Firm on any future matters representing the Fund or other Plaintiff-generated clients.

### ii.    The Oral Agreement Is Unenforceable

The Agreement is incapable of full performance within one year, and so falls within the Statute of Frauds, because the Firm has an indefinite obligation under the Agreement to pay Plaintiff fee commissions.

---

[4]    *Cf. Four Star Capital Corp.* v. *Nynex Corp.*, 183 F.R.D. 91, 102 (S.D.N.Y. 1997) ("Extrinsic evidence may not be used to meet the [Statute of Frauds'] threshold requirements where the agreement is clearly insufficient on its face.  Accordingly, plaintiff is barred from invoking any verbal agreements or relying on extrinsic evidence either as proof that a contract was formed between the parties or to supplement missing or incomplete terms of the contract."); *Bazak Int'l Corp.* v. *Mast Indus., Inc.*, 73 N.Y.2d 113, 118 (1989) ("Parol evidence … is immaterial to the threshold issue whether the documents are sufficient on their face to satisfy the Statute of Frauds.  Consideration of parol evidence in assessing the adequacy of a writing for Statute of Frauds purposes would otherwise undermine the very reason for a Statute of Frauds in the first instance.").

The parties' at-will employment relationship, presumptively terminable within a year, would ordinarily place the Agreement outside the scope of the Statute of Frauds. *See Kroshnyi* v. *U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 110 (2d Cir. 2014); *Guilbert*, 480 F.3d at 151. However, neither termination of the relationship, nor any other conceivable act, could complete the Firm's ongoing obligation to pay Plaintiff commissions on fees earned from future representations of clients she first generated. (*See* Def. Br. 10). In other words, performance of the Agreement "is dependent, not upon the will of the parties to the contract, but upon that of a third party." *N. Shore Bottling Co.* v. *C. Schmidt & Sons, Inc.*, 22 N.Y.2d 171, 178 (1968) (collecting cases). So long as the Firm sells services to a Plaintiff-generated client, its liability to Plaintiff under the Agreement continues. *See Martocci* v. *Greater N.Y. Brewery*, 301 N.Y. 57, 63 (1950) (holding "the endurance of defendant's liability is the deciding factor" when determining whether a contract is capable of performance within a year for Statute of Frauds purposes); *accord Darby Trading Inc.* v. *Shell Int'l Trading & Shipping Co.*, 568 F. Supp. 2d 329, 339 (S.D.N.Y. 2008).

This is Defendants' principal Statute of Frauds argument, but Plaintiff nowhere addresses it in her opposition brief. Instead, she recasts the Agreement as one of definite duration, superficially distinguishes Defendants' cited authorities on this basis, and then proceeds to argue that this more limited agreement passes muster. She attempts to shoehorn her Agreement into the category of cases involving definite, pre-existing obligations, "'future satisfaction [of which] involves the matter of computation only and is merely

13

mechanical in its application.'"  (Pl. Opp. 12 (quoting *Rifkind* v. *Web IV Music, Inc.*, 323 N.Y.S.2d 326, 335 (N.Y. Sup. Ct. 1971)).  As earlier indicated, the Court rejects Plaintiff's attempt to replead the terms of the Agreement in her opposition brief.  *See Jordan* v. *Chase Manhattan Bank*, 91 F. Supp. 3d 491, 500 (S.D.N.Y. 2015) ("It is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." (internal quotation marks and alterations omitted)).  And the Agreement, as pled, does not fall within Plaintiff's cited cases: unlike in *Rifkind*, Plaintiff's entitlement to compensation did not end with her term of employment, *see* 323 N.Y.S.2d at 332, and, unlike in *Cron*, that compensation was not capable of being fixed and earned within a year, only to be calculated later, *see* 91 N.Y.2d at 371.

Given Plaintiff's strategic reticence on this front, the Court's inquiry could end here.  Although it need not do so, the Court raises — and resolves — one potential counterpoint to the conclusion that full performance of the Agreement within a year is impossible.  It might be argued that Defendants' commission obligations to Plaintiff under the Agreement would be definite and terminable within a year if Defendants were simply to decline to represent Plaintiff-generated clients in future matters.  Technically, then, it could not be said that the Agreement, "by [its] very terms ha[s] absolutely no possibility in fact and law of full performance within one year."  *Boening*, 63 N.Y.2d at 454.

Such an argument would fail for several reasons.  For starters, the Second Circuit has recognized that this principle of absolute impossibility in the New York Statute of Frauds context "has not … been applied literally."  *S.*

*Cherry St., LLC* v. *Hennessee Grp. LLC*, 573 F.3d 98, 105 (2d Cir. 2009).  The

Circuit offered the New York Court of Appeals' decision in *Shirley Polykoff*

*Advertising, Inc.* v. *Houbigant, Inc.*, 43 N.Y.2d 921 (1978), as one example.  In

*Shirley*, the plaintiff alleged an oral agreement under which the defendant

agreed to pay the plaintiff $5,000 for "every year" that the defendant used an

advertisement that the plaintiff had designed for it.  *See id.* at 922.  In a literal

sense, then, full performance would have been completed within one year if the

defendant had paid the plaintiff $5,000 and used the advertisement only within

one year of the agreement.  *See S. Cherry St.*, 573 F.3d at 104.  But the

agreement also afforded the defendant the right to use the design in perpetuity.

*Id.*  The Second Circuit summed up the holding thus:

> [A]lthough the defendant was not obligated to use the
> advertisement in any given year, its non-use in any
> given year did not extinguish its obligation to pay if it
> used the advertisement in any subsequent year.
> Accordingly, the possibility existed that the agreement
> would not be performed within one year; the duration of
> the defendant's right and obligation was thus unlimited;
> and the court held that enforcement of the agreement
> was barred by the Statute of Frauds.

*Id.* (citing *Shirley Polykoff Advert.*, 43 N.Y.2d at 921-22); *accord Martocci*, 301

N.Y. at 63 (finding that in post-termination commission agreements, the "mere

cessation of orders ... would not alter the contractual relationship between the

parties; it would not constitute performance; [the] plaintiff would still be in

possession of his contractual right [to commissions], though it may have no

monetary value, immediately or ever.").

Relatedly, courts have rejected the notion that a party's theoretical ability to avoid indefinite commission obligations by refusing to conduct business with potential customers rescues an oral agreement from the grasp of the Statute of Frauds. In *Levine* v. *Zadro Products, Inc.*, for example, an oral agreement entitled the plaintiffs to commission on the defendants-manufacturers' sales to customers procured by the plaintiffs. *See* No. 02 Civ. 2838 (GBD), 2003 WL 21344550, at *1-2 (S.D.N.Y. June 9, 2003). After the parties' business relationship ended, the defendants continued to sell to these customers, but stopped paying commissions to the plaintiffs, who then sued. *Id.* The plaintiffs argued that the oral agreement was terminable within a year, and thus enforceable, because despite the indefinite commission structure, the defendants "could avoid their obligations by … refusing to accept offers from clients previously procured by [the] plaintiffs." *Id.* at *4.

The district court rejected this argument outright. It noted that "a requirement that commercially acceptable business be foregone in order to avoid payment of commissions is itself demonstrative of the defendant's enduring liability." *Levine*, 2003 WL 21344550, at *4. The court continued:

> As is demonstrated by [the] plaintiffs' position in this case, even when defendants terminate their employment relationship with plaintiffs, their obligation to pay commissions would endure. Commissions must be paid so long as orders placed by certain customers are accepted. Even if these clients do not place orders in a given year, they may do so in the future and plaintiffs would continue to be entitled to commissions on those later orders. … Accordingly, New York courts have consistently found the Statute of Frauds to apply where such commission agreements are involved.

*Id.* at *5.

Here, Plaintiff's ability to fulfill her relevant obligation under the Agreement within a year — generating a client for the Firm — does not mean that complete performance by all parties was possible within a year. *See Cron*, 91 N.Y.2d at 368. Rather, the Firm's commission liability endures beyond Plaintiff's termination and continues indefinitely so long as the Firm earns fees from a client that Plaintiff first generated. The oral Agreement is not fully performable within a year and, so, void under the Statute of Frauds. Accordingly, Plaintiff's breach of contract claim is dismissed.[5]

### 2.     Estoppel

The FAC's second cause of action alleges that "Defendants are estopped from failing to pay Plaintiff [20%] of the fees the Firm earned in connection with the Jefferies [L]itigation." (FAC ¶ 34). This is because Defendants promised to pay the client fee commission and, "[i]n reliance on such promise, Plaintiff expended substantial efforts generating clients for [D]efendants' benefit, including the Fund's retention of the Firm for the Jefferies Litigation." (*Id.* at ¶ 31).

Under New York law, "promissory estoppel has three elements: [i] a clear and unambiguous promise; [ii] a reasonable and foreseeable reliance by the party to whom the promise is made[;] and [iii] an injury sustained by the party asserting the estoppel by reason of the reliance." *Cyberchron Corp.* v. *Calldata*

---

[5]     In light of the Court's holding *supra*, the Court need not address Defendants' privity argument. (Def. Br. 14-16).

*Sys. Dev., Inc.*, 47 F.3d 39, 44 (2d Cir.1995) (internal quotation marks omitted) (quoting *Arcadian Phosphates, Inc.* v. *Arcadian Corp.*, 884 F.2d 69, 73 (2d Cir. 1989)).  The doctrine of promissory estoppel may not be used to circumvent the Statute of Frauds unless Plaintiff demonstrates that the denial of relief would produce not merely an unfair result but an "unconscionable" injury.  *Merex A.G.* v. *Fairchild Weston Sys., Inc.*, 29 F.3d 821, 826 (2d Cir. 1994); *Philo Smith & Co.* v. *USLIFE Corp.*, 554 F.2d 34, 36 (2d Cir. 1977) ("The strongly held public policy reflected in New York's Statute of Frauds would be severely undermined if a party could be estopped from asserting it every time a court found that some unfairness would otherwise result.").

To satisfy the "unconscionable injury" threshold, Plaintiff must demonstrate an "injury beyond that which flows naturally (expectation damages) from the non-performance of the unenforceable agreement."  *Merex A.G.*, 29 F.3d at 826.  "Thus, in the absence of 'egregious' circumstances, courts have consistently rejected promissory estoppel claims when the alleged injuries consisted of lost profits, lost fees, forgone business opportunities or damage to business reputation."  *Darby Trading Inc.*, 568 F. Supp. 2d at 341 (internal quotation marks omitted) (quoting *Mobile Data Shred, Inc.* v. *United Bank of Switzerland*, No. 99 Civ. 10315 (SAS), 2000 WL 351516, at *4 (S.D.N.Y. Apr. 5, 2000)); *see also Ellis* v. *Provident Life & Accident Ins. Co.*, 3 F. Supp. 2d 399, 410-11 (S.D.N.Y. 1998) (collecting cases and finding it well established under New York law that lost fees and forgone career opportunities are not "unconscionable injuries" for purposes of circumventing the Statute of Frauds).

Plaintiff nowhere alleges that she was deprived of her annual salary of $250,000, and she affirmatively alleges that she received 20% fee commissions from other client matters. (*See, e.g.,* FAC ¶¶ 12, 16). Her estoppel claim is based on the 20% Jefferies Fee Commission, but this is squarely the expectation damages from Defendants' non-performance of the unenforceable oral Agreement. Without more, such allegations do not demonstrate an unconscionable injury. *See, e.g., Philo Smith & Co.*, 554 F.2d at 36 (affirming district court's dismissal of promissory estoppel claim barred by the Statute of Frauds because plaintiff's injury — the loss of a finder's fee commission — was "solely a result of the non-performance of a void agreement" and "not the kind of injury contemplated by New York law" as falling within the unconscionability exception); *Darby Trading Inc.*, 568 F. Supp. 2d at 341 (granting motion to dismiss promissory estoppel claim because the injuries alleged, "while perhaps significant to Plaintiff, are most aptly described as the expectation damages of [the defendant's] non-performance of the unenforceable oral agreement"). Accordingly, Plaintiff estoppel claim is dismissed.

### 3. Unjust Enrichment

The FAC's third cause of action alleges that Defendants were unjustly enriched "by their failure to pay Plaintiff [20%] of the fees they earned in the Jefferies Litigation." (FAC ¶ 36). Defendants argue that this is both duplicative of the contract claim and an impermissible circumvention of the Statute of Frauds. (Def. Br. 19-21).

Plaintiff responds that she is entitled to assert independent claims for breach of contract and unjust enrichment, and that the value of her client generation services was greater than her salary.  (Pl. Opp. 18).  Generously construed, Plaintiff backs her position with three authorities (*id.*), but all three support only the general proposition that Plaintiff's "assertion of a breach of contract claim does not preclude her from pleading an unjust enrichment claim in the alternative."  *Labajo* v. *Best Buy Stores, L.P.*, 478 F. Supp. 2d 523, 531 (S.D.N.Y. 2007); *see also In re Vivendi Universal, S.A.*, No. 02 Civ. 5571 (RJH), 2004 WL 876050, at *12  (S.D.N.Y. Apr. 22, 2004) ("[T]he quasi-contract remedy of unjust enrichment may be alleged alongside breach of contract claims when the validity of the contract is called into question."); *MCI Worldcom Commc'ns, Inc.* v. *LD Wholesale Inc.*, No. 01 Civ. 6310 (RO), 2002 WL 1483886, at *1  (S.D.N.Y. July 9, 2002) (same).

None of Plaintiff's authorities involves the Statute of Frauds.  This is noteworthy because, while alternative pleading of contract and unjust enrichment claims is generally permissible, as one court recently noted, "there are exceptions, and this case involves one of them:  A party may not circumvent the Statute of Frauds by repleading an already barred breach of contract claim as a claim for unjust enrichment."  *Almeciga* v. *Ctr. for Investigative Reporting, Inc.*, 185 F. Supp. 3d 401, 412-13 (S.D.N.Y. 2016) (internal quotation marks omitted) (quoting *Four Star Capital Corp.* v. *Nynex Corp.*, 183 F.R.D. 91, 108 (S.D.N.Y. 1997)) (collecting cases); *see also Morgenweck* v. *Vision Capital Advisors, LLC*, 410 F. App'x 400, 402 n.1 (2d Cir.

20

2011) (summary order) ("It is well settled that under New York law a plaintiff may not escape the Statute of Frauds by attaching the label … 'unjust enrichment' … to the underlying contract claim."); *Intertex Trading Corp.* v. *Ixtaccihuatl S.A. de CV,* 754 F. Supp. 2d 610, 616 (S.D.N.Y. 2010) ("[I]t is well settled in New York … that a plaintiff may not assert an unjust enrichment claim to circumvent the statute of frauds.").

Here, as in *Almeciga,* "Plaintiff cites no case in which a court sustained an unjust enrichment claim where a breach of contract claim had been dismissed under the Statute of Frauds."  185 F. Supp. 3d at 413.  Accordingly, Plaintiff's unjust enrichment claim is dismissed.

### 4.    Conversion

The FAC's fourth cause of action alleges that Plaintiff "has a clear interest" in the Jefferies Fee Commission, and that "[b]y retaining and exercising dominion and control over these funds in derogation of Plaintiff's rights[,] [D]efendants have unlawfully converted those funds for their own benefit."  (FAC ¶ 38).  Defendants argue that Plaintiff's conversion claim is duplicative of her contract claim and, in any event, that "she never had 'ownership, possession or control' of the converted funds prior to the conversion."  (Def. Br. 24-25).

Plaintiff nowhere opposes these arguments.  (*See generally* Pl. Opp.). Accordingly, her conversion claim is deemed abandoned.  *See Moccio* v. *Cornell Univ.,* No. 09 Civ. 3601 (GEL), 2009 WL 2176626, at *4 (S.D.N.Y. July 21, 2009) ("Whatever the merit of [the defendants'] argument [for dismissal],

plaintiff has abandoned the ... claim, as her motion papers fail to contest or otherwise respond to [the] defendants' contention."), *aff'd*, 526 F. App'x 124 (2d Cir. 2013) (summary order); *accord City of Perry, Iowa* v. *Procter & Gamble Co.*, 188 F. Supp. 3d 276, 287 (S.D.N.Y. 2016) (dismissing claim as abandoned where the plaintiff did not oppose the defendants' arguments to dismiss that claim and collecting cases).

Apart from this procedural defect, Plaintiff's conversion claim is also dismissed on the merits:  The FAC fails to plead plausibly that Plaintiff owned, possessed, or controlled the Jefferies Fee Commission prior to its conversion. "New York law recognizes an action for conversion of money, but requires the plaintiff to have 'ownership, possession or control of the money' before its conversion." *ESI, Inc.* v. *Coastal Power Prod. Co.*, 995 F. Supp. 419, 433 (S.D.N.Y. 1998).  Here, Defendants allegedly repudiated their Agreement with Plaintiff in March 2015 (FAC ¶ 22), and the Jefferies Litigation fee was awarded months later in June 2015 (*id.* at ¶ 24).  Plaintiff nowhere alleges that she owned, possessed, or controlled the funds constituting the 20% commission before its conversion.

At best, Plaintiff alleges that she possessed a contractual right to the future fee commission.  But this is insufficient.  "[T]hough the [Agreement] might have granted [Plaintiff] some contractual right to eventual distribution of [certain] profits, [Plaintiff] never had control or possession of those funds," which are necessary elements in a conversion action.  *DDR Const. Servs., Inc.* v. *Siemens Indus., Inc.*, 770 F. Supp. 2d 627, 661 (S.D.N.Y. 2011); s*ee also ESI,*

*Inc.*, 995 F. Supp. at 433 (holding plaintiff's allegations "that it had an ownership interest by virtue of a contract ... and that defendants' breach of that contract denied it of that interest ... cannot be redressed via a conversion claim") (collecting cases); *Peters Griffin Woodward, Inc.* v. *WCSC, Inc.*, 452 N.Y.S.2d 599, 600 (1st Dep't 1982) (dismissing conversion claim as to unpaid commissions because the plaintiff "never had ownership, possession or control of the money constituting the [unpaid] commissions"). Accordingly, Plaintiff's conversion claim is dismissed.

### 5.   Tortious Interference with Contract

The FAC's fifth cause of action alleges that "Defendants Nadeem Faruqi and Lubna Faruqi with knowledge of the [A]greement each intentionally urged the other and [the Firm] to breach the [A]greement without justification ... [and] are accordingly liable for intentionally interfering" with Plaintiff's contractual relations with the Firm. (FAC ¶ 41). The Individual Defendants respond that a tortious interference claim cannot lie because, *inter alia*, they did not exceed the bounds of their authority in repudiating the alleged agreement. (Def. Br. 17-18).

Under New York law, "the elements of tortious interference with contract are [i] the existence of a valid contract between the plaintiff and a third party; [ii] the defendant's knowledge of the contract; [iii] the defendant's intentional procurement of the third-party's breach of the contract without justification; [iv] actual breach of the contract; and [v] damages resulting therefrom." *Kirch* v. *Liberty Media Corp.*, 449 F.3d 388, 401-02 (2d Cir. 2006) (internal quotation

marks omitted) (quoting *Lama Holding Co.* v. *Smith Barney Inc.*, 88 N.Y.2d 413, 424 (1996)).

Plaintiff's tortious interference claim fails because there is no valid contract, as the oral Agreement is void under the Statute of Frauds. "Because a valid agreement is an essential element of the claim, the courts have consistently refused to recognize claims of tortious interference when the underlying contract is unenforceable for failure to satisfy the Statute of Frauds."[6] *Mobile Data Shred*, 2000 WL 351516, at *7 n.9 (collecting cases).

Plaintiff's claim also fails because she has not plausibly alleged that the Individual Defendants acted other than in their official capacities when repudiating the Agreement. "A claim for tortious interference with a contract must be based on a non-party improperly interfering with a contract between two contracting parties, and cannot be based on the actions of a director or officer in his official capacity." *Rockland Exposition, Inc.* v. *All. of Auto. Serv. Providers of N.J.*, 894 F. Supp. 2d 288, 336 (S.D.N.Y. 2012), *as amended* (Sept. 19, 2012) (internal quotation marks omitted) (quoting *Scuderi* v. *Springer*, No. 03 Civ. 2098 (RO), 2004 WL 2711048, at *2 (S.D.N.Y. Nov. 29, 2004)); *see also IMG Fragrance Brands, LLC* v. *Houbigant, Inc.*, 679 F. Supp. 2d 395, 407 (S.D.N.Y. 2009) ("[T]he general rule is that a claim for tortious

---

[6]     One potential exception to this rule is "a claim that but for the interference, the parties would have abided by the contract despite its unenforceability." *Lauter* v. *W & J Sloane, Inc.*, 417 F. Supp. 252, 261-62 (S.D.N.Y. 1976). Plaintiff makes no such alternative claim here.

interference will lie only against a stranger who improperly interferes with a contract between two contracting parties.").

The Individual Defendants are "the sole equity partners in the Firm" and "possessed and exercised the authority to hire and fire employees, to supervise, direct and control their work, and to prescribe the terms and conditions of their employment, including their work hours and compensation." (FAC ¶¶ 6, 8). There is no plausible allegation that the Individual Defendants acted outside the scope of their duties and contrary to the Firm's interests when they repudiated the Agreement. *See Joan Hansen & Co.* v. *Everlast World's Boxing Headquarters Corp.*, 744 N.Y.S.2d 384, 389-90 (1st Dep't 2002) ("[T]he existence of a plausible claim for breach of contract does not, without more, provide a basis for the assertion of a cause of action for interference with contractual relations against those corporate officers and directors whose actions brought about the asserted breach."); s*ee also Craig* v. *First Web Bill, Inc.*, No. 04 Civ. 1012 (DGT), 2004 WL 2700128, at *9 (E.D.N.Y. Nov. 29, 2004) ("Generally, [a] corporate officer who is charged with inducing the breach of a contract between the corporation and a third party is immune from liability if it appears that he is acting in good faith as an officer ... (and did not commit) independent torts or predatory acts directed at another." (internal quotation marks omitted) (quoting *Murtha* v. *Yonkers Child Care Ass'n*, 45 N.Y.2d 913, 915 (1978)).

The authorities that Plaintiff cites (Pl. Opp. 16-17), are consistent with this result. *See, e.g., Albert* v. *Loksen*, 239 F.3d 256, 275 (2d Cir. 2001) ("[A]

plaintiff may maintain an action for tortious interference against a *co-employee* by showing that the *co-employee* acted outside the scope of his or her authority … [or] committed an independent tortious act against the plaintiff." (alterations omitted and emphases added)); *Miller* v. *Richman*, 592 N.Y.S.2d 201, 203 (4th Dep't 1992) ("The complaint fail[ed] to allege that [the defendant] was acting outside the scope of her employment … or that [the defendant] procured her discharge through fraudulent misrepresentation, threats or the violation of a duty owed to plaintiff by virtue of a confidential relationship.").

Moreover, it does not follow from these authorities that Plaintiff's "close 20 year relationship" with the Individual Defendants (Pl. Opp. 17) somehow created a special legal duty relevant to the tortious interference claim.  *See Wilson* v. *Diocese of N.Y. of Episcopal Church*, No. 96 Civ. 2400 (JGK), 1998 WL 82921, at *11 (S.D.N.Y. Feb. 26, 1998) ("[F]riendship alone does not establish a confidential relationship.").  Nor does Plaintiff demonstrate how the existence of any such relationship alters the result compelled by the absence of a plausible claim that the Individual Defendants acted outside the scope of their duties when repudiating the Agreement.  Accordingly, Plaintiff's tortious interference with contractual relations claim against the Individual Defendants is dismissed.[7]

---

[7]    In light of the Court's holding *supra*, the Court need not address Defendants' limited liability partnership argument.  (Def. Br. 4-6).

### 6.    Accounting

The FAC's sixth cause of action seeks "an accounting of all monies earned by the Firm in connection with the Jeffries Litigation."  (FAC ¶ 43). Defendants argue that Plaintiff has not demonstrated an entitlement to an accounting.  (Def. Br. 25-27).

Under New York law, "a plaintiff seeking an accounting … must allege both a fiduciary relationship between the plaintiff and defendant and a breach of that fiduciary duty by the defendant."  *Soley* v. *Wasserman*, 823 F. Supp. 2d 221, 237 (S.D.N.Y. 2011) (internal quotation marks omitted) (quoting *Bezuszka* v. *L.A. Models Inc.*, No. 04 Civ. 7703 (NRB), 2006 WL 770526, at *17 (S.D.N.Y. Mar. 24, 2006)).  Plaintiff does not — and cannot — argue that her position as an at-will, non-equity "partner" entitles her to an accounting.  (Pl. Opp. 19). *See Grappo* v. *Alitalia Linee Aeree Italiane, S.p.A.*, 56 F.3d 427, 432 (2d Cir. 1995); *D'Esposito* v. *Gusrae, Kaplan & Bruno PLLC*, 844 N.Y.S.2d 214, 215 (1st Dep't 2007).  Instead, she claims that a fiduciary relationship existed "aris[ing] from the trust, confidence and reliance plaintiff placed in [the Firm]" and that the existence of such a relationship is necessarily a fact-specific inquiry.  (Pl. Opp. 19).

Plaintiff's argument is unavailing.  The FAC offers insufficient facts to plead plausibly that a fiduciary relationship existed between her and Defendants.  "Ordinarily a contract of employment does not give rise to a fiduciary relationship.  That is so, even if the employee's compensation depends upon sales commissions calculated in the first instance by the employer."

*Cavallo* v. *Am. Skandia Life Assur. Corp.*, No. 94 Civ. 2908 (CSH), 1997 WL 251538, at *14 (S.D.N.Y. May 13, 1997).  Plaintiff's bare allegations that she "trusted" and enjoyed a two-decades-long friendship with the Individual Defendants are insufficient to support a fiduciary relationship.  *See Persh* v. *Petersen*, No. 15 Civ. 1414 (LGS), 2015 WL 6393049, at *5 (S.D.N.Y. Oct. 22, 2015) (recognizing that "[f]riendship does not create a fiduciary relationship" and dismissing breach of fiduciary duty claim); *Freedman* v. *Perlman*, 706 N.Y.S.2d 405, 409 (1st Dep't 2000) (finding allegations that employee "trusted" employer "to treat him fairly ... does not give rise to a fiduciary duty" (citing *Ingle* v. *Glamore Motor Sales*, 73 N.Y.2d 183 (1989)).  Accordingly, Plaintiff's accounting claim is dismissed.

### 7.   New York Labor Law § 193

The FAC's seventh and final cause of action alleges that "Defendants' failure to pay [P]laintiff a portion of the fee earned in the Jefferies Litigation constituted an unlawful deduction from [P]laintiff's wages which was not expressly authorized in writing or for [P]laintiff's benefit," in violation of NYLL § 193.  (FAC ¶ 45).

Under § 193, "[n]o employer shall make any deduction from the wages of an employee, except deductions which ... are expressly authorized in writing by the employee and are for the benefit of the employee[.]"  N.Y. Lab. Law § 193. Plaintiff's § 193 claim fails for three independent reasons: first, she has no enforceable contractual right to the Jefferies Fee Commission; second, even if she did, the commission is not a "wage" under § 193; and third, even if the

commission were a "wage," nonpayment would not qualify as a "deduction" under § 193.

### a.   Plaintiff Has No Enforceable Right to the Jefferies Fee Commission

As a threshold matter, Plaintiff's NYLL claim fails because, the Agreement having been found to be unenforceable, Plaintiff is not entitled to the Jefferies Fee Commission. "The failure of [the plaintiff's] contract claim also necessarily defeats his wage claim under New York Labor Law § 193." *O'Grady* v. *BlueCrest Capital Mgmt. LLP*, 646 F. App'x 2, 4 (2d Cir. 2016) (summary order); *see also Tierney* v. *Capricorn Inv'rs, L.P.*, 592 N.Y.S.2d 700, 703 (1st Dep't 1993) (holding that plaintiff "cannot assert a statutory claim for wages under the Labor Law if he has no enforceable contractual right to those wages"). Plaintiff's NYLL claim may be dismissed on this basis alone.

### b.   The Jefferies Fee Commission Is Not a "Wage" Under § 193

Plaintiff's NYLL claim also fails because the Jefferies Fee Commission does not qualify as a "wage" under § 193. Section 190(1) of the NYLL defines "wages" as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis." N.Y. Lab. Law § 190(1). Plaintiff argues that the Jefferies Fee Commission qualifies as a "wage" and maintains that the issue is governed, *inter alia*, by a pair of decisions from the New York Court of Appeals: *Truelove* v. *Northeast Capital & Advisory, Inc.*, 95 N.Y.2d 220 (2000), and *Ryan*

v. *Kellogg Partners Institutional Services*, 19 N.Y.3d 1 (2012).  The Court
surveys each case in turn.

In *Truelove*, the plaintiff analyst sued the defendant investment bank
under § 193 to recover the unpaid balance of a bonus that had been fully
awarded but payable in quarterly installments.  *See* 95 N.Y.2d at 222-23.  The
bonus was awarded based on "a combination of the individual's performance
and [the defendant investment bank's] performance" as reflected in its yearly
revenues.  *Id.* at 222.  The Court of Appeals held that the NYLL definition of
"wages" "exclud[es] certain forms of 'incentive compensation' that are more in
the nature of a profit-sharing arrangement and are both contingent and
dependent, at least in part, on the financial success of the business
enterprise."  *Id.* at 223-24.  "[I]n expressly linking earnings to an employee's
labor or services personally rendered, [the statutory definition of wages]
contemplates a more direct relationship between an employee's own
performance and the compensation to which that employee is entitled."  *Id.* at
224.  The court concluded that the plaintiff's bonus payments did not qualify
as a wage because, *inter alia*, the bonus was based not on "plaintiff's own
personal productivity," but on "[the] employer's overall financial success."  *Id.*

The *Ryan* court distinguished *Truelove* on the facts.  In *Ryan*, the
plaintiff alleged that he was guaranteed a $175,000 bonus as part of his yearly
compensation.  *See* 19 N.Y.3d at 6-8.  After he received less than promised and
was later fired, he sued to recover the unpaid balance.  *Id.*  The court held that
the unpaid bonus qualified as a wage because it "was 'expressly link[ed]' to his

'labor or services personally rendered'; namely, his work as a floor broker for [the defendant]." *Id.* at 16 (quoting *Truelove*, 95 N.Y.2d at 223). Moreover, the court found, the plaintiff's bonus "had been earned and was vested" before he left his job, and its "payment was guaranteed and non-discretionary as a term and condition of his employment." *Id.*

The Jefferies Fee Commission does not fit neatly into either of these two categories. For example, the commission was non-discretionary and based on Plaintiff's generation of the Fund client. (*See, e.g.,* FAC ¶ 12 ("Plaintiff would be paid … [20%] of any fees earned by the Firm in connection with clients she generated."); *id.* at ¶ 23 ("The parties' agreement did not condition [P]laintiff's entitlement to a generation fee on her continued employment at the Firm[.]"). But the commission bears a greater similarity to the *Truelove* compensation disqualified as a wage: it was "more in the nature of a profit-sharing arrangement," "contingent and dependent, at least in part, on the financial success" of the Jefferies Litigation contingency representation, and not "expressly link[ed] to [Plaintiff's] labor or services personally rendered." (*See id.* at ¶ 18 ("[The Firm] *if successful* [in the Jefferies Litigation], would be entitled to 19% of any fee awarded by the Delaware court." (emphasis added)); *id.* at ¶ 23 ("The parties' agreement did not condition [P]laintiff's entitlement to a generation fee … on the amount of work she performed, if any, in connection with the client's matter")). This is a close question but, on balance, the Court finds that the Jefferies Fee Commission does not qualify as a wage under § 193

because it lacks a "direct relationship between [Plaintiff's] own performance and the compensation to which [she] is entitled."  *Truelove*, 95 N.Y.2d at 223.

### c.   Nonpayment of the Jefferies Fee Commission Is Not a "Deduction" Under § 193

The Court need not rest on this non-wage classification, however, because Plaintiff's NYLL claim fails for a clearer reason: even if the Jefferies Fee Commission were to qualify as a "wage," Defendants' nonpayment constitutes a failure to pay the wage, not a "deduction" of the wage in violation of § 193. This distinction and conclusion are supported by two decisions in this District: *Gold* v. *American Medical Alert Corp.*, No. 14 Civ. 5485 (JFK), 2015 WL 4887525 (S.D.N.Y. Aug. 17, 2015), and *Goldberg* v. *Jacquet*, No. 14 Civ. 1581 (PAC), 2015 WL 5172939 (S.D.N.Y. Sept. 3, 2015).  Plaintiff resists this conclusion and, in many ways, the distinction itself.  She urges the Court to reject these decisions as "wrongly decided."  (Pl. Opp. 6).  The Court declines to do so because it agrees with their reasoning; a recent summary order affirming *Goldberg* and favorably quoting *Gold* indicates that a panel of the Second Circuit does, too.

"[T]he majority, and more persuasive, interpretation of § 193 is that it has nothing to do with failure to pay wages or severance benefits, governing instead the specific subject of making deductions from wages."  *Malinowski* v. *Wall St. Source, Inc.*, No. 09 Civ. 9592 (PAE), 2012 WL 279450, at *3 n.5 (S.D.N.Y. Jan. 31, 2012) (internal quotation marks omitted) (quoting *Monagle* v. *Scholastic, Inc.*, No. 06 Civ. 14342 (GEL), 2007 WL 766282, at *2 (S.D.N.Y. Mar. 9, 2007)).

The *Gold* court adopted this distinction and, on that basis, rejected the plaintiff's § 193 claim to recover his unpaid salary. It held that "the deduction [the p]laintiff claims is merely the total withholding of wages, which is the essence of the breach of contract claim. Section 193 requires something more: a specific instance of docking the employee's pay." *Gold*, 2015 WL 4887525, at *2 (collecting cases).[8] This Court also agrees with *Gold* that a broad reading of "deduction" is inconsistent with the NYLL's purpose and statutory framework. *Id.* at *4-5. Section 193 was intended "to place the risk of loss for such things as damaged or spoiled merchandise on the employer rather than the employee." *Id.* at *5 (internal quotation marks omitted) (quoting *Hudacs* v. *Frito-Lay, Inc.*, 90 N.Y.2d 342, 349 (1997)). Permissible deductions under § 193 for insurance premiums, gym membership, tuition, and day care suggest that a "deduction" is more targeted and direct than a wholesale withholding. *Id.* (citing § 193(b)(i)-(xiv)). In sum, "'deductions' are better understood as, and limited to, things like fines, payments, or other forms of pay docking." *Id.*

In a summary order issued after the completion of briefing on the instant motion, the Second Circuit recognized that a viable § 193 claim requires an allegation of "a specific deduction from wages and not merely a failure to pay wages." *Goldberg* v. *Jacquet*, No. 15-3104, 2016 WL 3569930, at *1 (2d Cir.

---

8       *Gold* distinguished a series of cases that seemingly permitted a § 193 theory to recover vested bonuses on the grounds, *inter alia*, that none of those cases involved "parties [that] disputed whether the withholding was specific enough to be considered a 'deduction.' Indeed, those cases explicitly frame their analysis as interpreting the definition of 'wages,' not 'deduction.'" *Gold*, 2015 WL 4887525, at *3 (citing, e.g., *Ryan*, 19 N.Y.3d at 16)).

June 30, 2016) (summary order) (citing *Kletter* v. *Fleming*, 820 N.Y.S.2d 348, 350 (3d Dep't 2006)).  The Circuit further agreed that "a deduction is more targeted and direct than the wholesale withholding of wages" and reiterated "that the purpose of [§] 193 is to place the risk of loss for such things as damaged or spoiled merchandise on the employer rather than the employee." *Id.* (internal quotation marks and alterations omitted) (quoting *Gold*, 2015 WL 4887525, at *5).  Accordingly, the Second Circuit affirmed the district court's ruling "that although [the plaintiff] did not receive wages to which he was entitled, his wages were not reduced in the manner prohibited by NYLL § 193." *Goldberg*, 2016 WL 3569930, at *1.

Here, nonpayment of the Jefferies Fee Commission is indicative (at best) of a failure to pay, not of a deduction of wages.  The nonpayment was not "a specific instance of docking [Plaintiff's] pay," *Gold*, 2015 WL 4887525, at *2; it was not akin to deductions for insurance premiums, gym membership, tuition, or day care, *id.* at *5; and it was not intended to offset a "loss [due to] such things as damaged or spoiled merchandise," *Goldberg*, 2016 WL 3569930, at *1.  The Jefferies Fee Commission, as pled in the FAC, bears none of the attributes of a deduction.[9]  Accordingly, Plaintiff's § 193 claim is dismissed.[10]

---

[9]   Plaintiff's own characterization of the nonpayment, far from supporting a "deduction" classification, supports a "failure to pay" classification.  (*See, e.g.,* FAC ¶ 45 ("Defendants' *failure to pay* plaintiff a portion of the fee earned in the Jefferies Litigation constituted an unlawful deduction[.]" (emphasis added)); *id.* at ¶ 22 ("[Defendants] would not pay her any portion of the fees the Firm earned in the Jefferies Litigation"); *id.* at ¶ 25 ("[Defendants] refused to provide her with any portion of the fees earned in the Jefferies Litigation.")).

[10]   In light of the Court's holding *supra*, the Court need not address whether the Individual Defendants are "employers" within the meaning of § 190.  (Pl. Opp. 9-10).

### C.      Plaintiff Is Not Granted Leave to Amend the FAC

Plaintiff has not sought leave to amend the FAC for a second time and, accordingly, the Court affords her no such opportunity.  *See Shields* v. *Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1132 (2d Cir. 1994) ("Although federal courts are inclined to grant leave to amend following a dismissal order, we do not deem it an abuse of the district court's discretion to order a case closed when leave to amend has not been sought."); *Chen* v. *Antel Commc'ns, LLC*, 653 F. App'x 43, 44 (2d Cir. 2016) (summary order) (same).

### CONCLUSION[11]

For the foregoing reasons, Defendants' motion to dismiss the FAC is GRANTED with prejudice.  The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:      February 23, 2017
            New York, New York

_____
            KATHERINE POLK FAILLA
            United States District Judge

---

[11]    In light of the Court's holding *supra*, the Court need not address Defendants' remaining arguments predicated on the New York Rules of Professional Conduct (Def. Br. 6-9), nor those concerning punitive or liquidated damages (*id.* at 29-30).